UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE KASTLER,<br><br>    Plaintiff,<br><br>v.<br><br>OH MY GREEN, INC.,<br><br>    Defendant. | Case No. 19-cv-02411-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 12, 21 |

Pending before the Court is Plaintiff's motion to remand and Defendant's motion to dismiss. *See* Dkt. Nos. 12, 21. For the reasons noted below, the Court **DENIES** both Plaintiff's motion to remand the case to California state court and Defendant's motion to dismiss Count 6 of Plaintiff's First Amendment Complaint.

**I. BACKGROUND**

Plaintiff Anne Kastler filed a wage and hour putative class action complaint in the San Mateo County Superior Court on February 28, 2019. Dkt. No. 1-1 ("Complaint"). Plaintiff listed "OH MY GREEN, INC." and "DOES 1 through 100" as Defendants. *Id.* ¶ 6–8. Plaintiff was employed by Defendant Oh My Green as an hourly, non-exempt employee in California from approximately November 2016 to February 2017. *Id.* ¶ 18. The putative class was comprised of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." *Id.* ¶ 13. Plaintiff asserts that Defendants "engaged in pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California. This pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks . . . ." *Id.* ¶ 26. Plaintiff additionally alleges that Defendants violated sections of the California

Labor Code by failing to pay overtime wages, provide uninterrupted meal and rest periods, pay the minimum wage, pay wages owed at discharge or resignation, provide complete or accurate wage statements, keep complete or accurate payroll records, and reimburse all necessary business-related expenses, among other violations. *Id.* ¶¶ 37–45.

Plaintiff asserts eight causes of action for violations of (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 226.7 and 512(a) (unpaid meal period premiums); (3) California Labor Code section 226.7 (unpaid rest period premiums); (4) California Labor Code sections 1194, 1197, and 1197.1 (unpaid minimum wages); (5) California Labor Code sections 201 and 202 (final wages not timely paid); (6) California Labor Code section 226(a) (non-compliant wage statements); (7) California Labor Code sections 2800 and 2802 (unreimbursed business expenses); and (8) California Business and Professional Code section 17200 (Unfair Competition Law, "UCL"). Dkt. No. 15. at 1.

Defendant Oh My Green, Inc. removed the case to federal court on May 2, 2019, claiming that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Defendant filed a motion to dismiss, Dkt. No. 5, on May 9, 2019, which the Court dismissed as moot after Plaintiff filed a First Amended Complaint ("FAC") on May 23, 2019. Dkt. No. 30. On May 22, 2019, Plaintiff filed a motion to remand, for which bringing is complete. Dkt. Nos. 12 ("Remand Mot."), 22 ("Remand Opp."), 24 ("Remand Reply"), and 25 ("Remand Surreply"). On June 3, 2019, Defendant filed a motion for dismiss Plaintiff's FAC. Dkt. Nos. 21 ("Dismiss Mot."), 23 ("Dismiss Opp."), and 27 ("Dismiss Reply"). The Court held a hearing on the motion to remand on October 10, 2019. Dkt. No. 38.

**II.  LEGAL STANDARD**

    **A.  Removal Jurisdiction**

A defendant may remove any civil action to federal court where the district court would have original jurisdiction over the action. 28 U.S.C. § 1441; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To do so, a party seeking removal must file a notice of removal within 30 days of receiving the initial pleading or within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or

has become removable." 28 U.S.C. § 1446(b)(1), (3). The notice must contain a "short and plain statement of the grounds for removal." *Id.* § 1446(a); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The removing party bears the burden of establishing removal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683–85 (9th Cir. 2006). A plaintiff may seek to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there was a defect in the removal procedure. 28 U.S.C. § 1447(c).

### B. Class Action Fairness Act

CAFA vests district courts with original jurisdiction over civil actions in which the amount in controversy exceeds $5 million, there is minimal diversity of citizenship between the parties, and the action involves at least 100 class members. 28 U.S.C. § 1332(d). Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6).

### C. Rule 12(b)(6) Dismissal

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless,

3

Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. MOTION TO REMAND

Plaintiff challenges Defendant's removal to federal court, arguing that the notice fails to establish CAFA jurisdiction. Plaintiff does not dispute that the number of putative class members exceeds the jurisdictional requirement, but contends that Defendant fails to establish the remaining requirements: minimal diversity and an amount in controversy exceeding $5 million. Remand Mot. 6. Plaintiff also argues that even if these requirements were met, the local controversy and home-state controversy exceptions require the Court to remand the case to state court. Remand Reply at 6–7. The Court addresses each argument in turn.

### A. Minimal Diversity

CAFA requires "minimal diversity" between the parties. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). The minimal diversity requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For purposes of diversity, a corporation is deemed to be a citizen of every state where it has been incorporated and where it has its "principal place of business." *Id.* § 1332(c)(1).

Here, Defendant admits that it is a citizen of California, given that its headquarters are located in San Mateo, California. Dkt. No. 1 ¶ 20. Plaintiff is also a citizen of California. Dkt. No. 1-1 ¶ 5. Plaintiff argues that Defendant cannot establish minimal diversity under CAFA because its allegation that "at least one of the proposed Class Members is currently a resident of the State of Washington" is insufficient to meet the preponderance standard. Remand Mot. 10. While this statement in Defendant's notice of removal likely was not enough to establish minimal diversity, Defendant provides an affidavit from Grecelie Moreno, Sr., HR Business Partner at Oh

4

My Green, Inc., detailing the names and residences of six current and former hourly-paid and non-exempt employees who worked in California between February 2016 to present, but now live outside of California. Dkt. No. 22-1 ¶ 11–12. Although "a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties," *Kanter v. Warner-Lamber Co.*, 265 F.3d 853, 857 (9th Cir. 2001), the Court may properly consider evidence submitted by the removing party "in its opposition to remand, even if this evidence was not submitted with the original removal petition," *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *3 (N.D. Cal. June 14, 2013) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002)). After considering the details provided in Defendant's opposition to remand, the Court finds that minimal diversity has been shown.

Plaintiff further argues that because she seeks to represent a class that is limited to California citizens and amended her complaint specifically to clarify this, the identified out-of-state individuals are not part of the proposed class. Remand Reply 6; *see also* FAC ¶ 13 (defining proposed class as those "who worked . . . within the State of California . . . *and who currently reside in California*") (emphasis added). However, the Court must consider only the operative complaint at the time of removal, not one amended after removal in an effort to eliminate federal jurisdiction. *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) ("plaintiff['s] attempts to amend a complaint after removal to eliminate federal jurisdiction are doomed to failure"); *see also Doyle v. OneWest Bank, FSB*, 764 F.3d 1097, 1098 (9th Cir. 2014) ("[T]he District Court should have determined the citizenship of the proposed plaintiff class based on [plaintiff's] complaint as of the date the case became removable.") (internal quotation omitted). Plaintiff's Complaint did not limit proposed class members to residents of California, so Defendant meets the minimal diversity requirement.

### B. Amount in Controversy

When evaluating the amount in controversy, the Court must determine whether it is "more likely than not" that the amount in controversy exceeds $5 million. *See Bryan v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2009 WL 440485, at *2 (N.D. Cal. Feb. 23, 2009). The Court must assume the truth of the allegations in the complaint and that a jury will return a verdict for the

1   plaintiff on all the alleged claims. *Id.*

2       A defendant may not establish federal jurisdiction "by mere speculation and conjecture, [or] with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197–98. Instead it must rely on "real evidence and the reality of what is at stake in the litigation." *Id.* Nevertheless, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Courts have found that declarations or affidavits may be sufficient to satisfy this burden. *See, e.g.*, *Lewis v. Verizon*, 627 F.3d 395, 397 (9th Cir. 2010) (finding an affidavit showing that "potential damages could exceed the jurisdictional amount" sufficient to satisfy the removing defendant's burden). A defendant is only required to submit evidence establishing the amount in controversy "when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 135 S. Ct. at 554. The Ninth Circuit has not determined whether the plaintiff must also submit evidence, and instead has held that the district court should "set a reasonable procedure . . . so that each side has a fair opportunity to submit proof." *Ibarra*, 775 F.3d at 1199–1200.

    Plaintiff argues that Defendant fails to establish by a preponderance of the evidence that the amount in controversy exceeds CAFA's $5 million jurisdiction threshold. Defendant proffers the following calculations:

- Overtime Claim: 476 employees x average 26 workweeks x average hourly rate of $16.50 x 1.5 overtime rate = $306,306
- Meal Break Claims: 476 employees x 26 workweeks x $16.50 x 5 days per week x 2 additional hour penalty = $2,042,040
- Rest Break Claims: 476 employees x 26 workweeks x $16.50 x 5 days per week x 2 additional hour penalty = $2,042,040
- Minimum Wage Claims: Unpaid minimum wage (476 employees x 26 workweeks x $16.50 minimum wage = $204,204) + Liquidated damages ($204,204) + Penalties ($100 initial failure to timely pay + $250 for each subsequent pay period = $1,475,600) = $1,884,008.
- Waiting Time Penalty Claim: 296 full-time hourly employees x $16.50 average hourly rate x 8 hours x 30 days = $1,172,160
- Wage Statement Claim: (476 wage statements x $50 = $23,800) + (476 wage statements x 12 subsequent violations x $100 = $571,200) = $595,000
- Restitution: overtime wages claim + unpaid minimum wages claim = $510,510
- Attorneys' Fees: 25% x total claimed ($8,552,064) = $2,138,016

6

Remand Opp. 13–20. Defendant proposes a total amount in controversy of $10,690,080. *Id.*

Defendant provides evidence regarding its baseline assumptions: Ms. Moreno estimates that there are 476 proposed class members, that 296 of these individuals were full-time hourly employees, that the average number of days worked by proposed class members is 183.25 days (or about 26 weeks), and that the proposed class members received minimum hour wages between $15 and $18 per hour (or an average of $16.50). Dkt. No. 22-1 ¶ 8–10. To the extent Plaintiff challenges this declaration, the Court finds that Ms. Moreno, as a senior human resources official, established a sufficient foundation for her statements, particularly given the early stage of the litigation. Ms. Moreno explained that her knowledge is based on her normal business responsibilities and her personal review of Defendant's business records. *Id.* ¶ 5–8. There is no need, under the circumstances presented, for Defendant to provide the business records themselves. *See Lewis*, 627 F.3d at 397.

### i. Overtime and Minimum Wage Claims

For Plaintiff's overtime and minimum wage claims, Defendant assumed one hour of unpaid minimum wage and unpaid overtime per week per class member to reach its estimates. As Defendant correctly notes, this is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations. *See, e.g.*, *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week.").

Plaintiff's only meaningful response to these calculations is to claim that Defendant double counts the amount in controversy by repeating the amounts claimed in its calculations for restitution under the UCL. Remand Reply 13. The Court agrees. "[T]he basis for recovery of restitution under the UCL is the same violations of the Labor Code for which Plaintiff might recover damages. As double recovery would not be allowed, the amount projected for restitution under the UCL must be discounted from the total." *Arriola v. WS Packaging Grp. Inc.*, No. 2:10-

7

CV-07941, 2011 WL 103959, at *2 (C.D. Cal. Jan. 12, 2011). Thus, the Court reduces Defendant's claimed amount in controversy by $510,510.

### ii. Meal and Rest Break Claims

Plaintiff principally challenges Defendant's use of a 100% violation rate throughout its calculations. Generally, courts "appear to allow the defendant to assume a 100% violation rate only where such an assumption is supported directly by, or reasonably inferred from, the allegations in the complaint." *Altamirano*, 2013 WL 2950600, at *7. Defendant points the Court to Plaintiff's allegations that Defendant "failed to provide all requisite uninterrupted meal and rest periods," Dkt. No. 1-1 ¶ 38, to argue that the Complaint supports such an inference in this case. Remand Opp. 12, 14–15. However, as Plaintiff notes, the Complaint provides a limiting clause to its allegations:

> "Plaintiff is informed and believes, and based thereon alleges . . . that Plaintiff and the other class members were entitled to receive all meal periods or payment of one additional hour of pay at Plaintiffs and the other class member's regular rate of pay when a meal period was missed, and they did not receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class member's regular rate of pay *when a meal period was missed*."

Dkt. No. 1-1 ¶ 38 (emphasis added). Read in full, the Complaint does not allege that Plaintiff and proposed class members missed every meal and rest break, but rather that not all meal and rest breaks were given or compensated for when missed. Defendant's use of a 100% violation rate for meal and rest break claims is thus unreasonable. *See Ibarra*, 775 F.3d at 1198–99 (finding defendant's assumption of a 100% violation rate unreasonable because "a 'pattern and practice' of doing something does not necessarily mean always doing something.").

Alternatively, Defendant argues that even assuming a 20% violation rate for meal and rest break violations, it meets the CAFA threshold. Remand Opp. 24–25. Plaintiff did not allege how often these violations occurred in the Complaint or provide a declaration, but conceded at the October 10, 2019 hearing that assuming a 20% violation rate for the meal and rest break claims would be reasonable. The Court agrees. *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) ("Courts in this Circuit,

8

including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods.").

Last, Plaintiff argues that Defendant double counted the amount in controversy by calculating two hours of pay for each meal and rest period violation instead of the single hour allowed under California Labor Code section 226.7. Remand Reply 15–16. Section 226.7(c) provides only "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7. Accordingly, the Court further reduces Defendant's calculations by half, which results in the following calculation:

- Meal and Break Claims: 476 employees x 26 workweeks x $16.50 x 1 day per week x 2 (for an additional hour penalty) = $408,408

### iii. Waiting Time Penalties

Plaintiff similarly objects to Defendant's use of a 100% violation rate when calculating waiting time penalties. In the Complaint, Plaintiff alleges:

> [Defendant] knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation.

Dkt. No. 1-1 ¶ 31. Plaintiff very clearly ties its waiting time penalties claim to its other claims. Because Plaintiff alleges that Defendant failed to pay overtime and minimum wages and meal and rest break premiums to present, using the thirty day maximum is inherently reasonable. *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant] during the statutory period was due unpaid wages.").

### iv. Wage Statement Violations

Under California Labor Code section 226(e), an employer owes $50 per initial pay period

and $100 for each subsequent pay period when it fails to provide complete and accurate wage statements to employees, with a maximum penalty of $4,000 per employee. In its Complaint, Plaintiff alleged that "Defendants have intentionally and willfully failed to provide Plaintiff and other class members with complete and accurate wage statements. The deficiencies include, but are not limited to: the failure to include the total number of hours worked by Plaintiff and other class members." Dkt. No. 1-1 ¶ 96. Defendant calculated the wage statement violations assuming that each wage statement was in violation of California Labor Code section 226, estimating that "at least one hour of unpaid minimum wage and one hour of unpaid overtime per week" would be reflected on the statements. Remand Opp. 19. Because the baseline assumptions of one hour of unpaid minimum wage and one hour of unpaid overtime per week are reasonable, as noted above, Defendant's calculations for wage statement violations are also reasonable. *See Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014) ("[Plaintiff's] complaint contains broadly-worded averments that [defendant] systematically violated § 226. . . Based on [plaintiff's] broad allegations, [defendant] reasonably assumes that each wage statement given to each putative class member may have violated § 226.").

      **v.    Attorney's Fees**

Finally, the remaining assumption is that Defendant's attorney's fees amount to 25% of the reasonably calculated unpaid wages and penalties. Plaintiff points to *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 796 (9th Cir. 2018), where the Ninth Circuit held that "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Fritsch* also noted that the "calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.*

Here, Plaintiff asserts claims on behalf of a putative class and seeks attorney's fees under statutes that allow fees to be recovered by "an employee" injured as a result of the alleged wage and hour violations. *See, e.g.*, Cal. Labor Code §§ 226(e)(1), 1194(a). Although Defendant

provides very little to support a 25% fee calculation,[1] the Court can rely on its "own knowledge of customary rates and [its] experience concerning reasonable and proper fees." *Fritsch*, 899 F.3d at 795 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). In the Court's experience, Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply the 25% benchmark rate. *See Cortez v. United Nat. Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, at *7 (N.D. Cal. Feb. 27, 2019) (citing several other wage and hour cases using the 25% benchmark). Even if a 25% fee were unreasonable, Defendant meets the jurisdictional threshold with a fee as low as 15%, which would certainly be more than reasonable in light of the statutory bases for fees in this type of case.

### vi. Total Amount in Controversy

Although the Court reduced some of Defendant's amount in controversy estimates above, it finds that Defendant has proven by a preponderance of the evidence that the amount in controversy meets CAFA's jurisdictional threshold. The Court summarizes its calculations below:

- Overtime Claim: 476 employees x average 26 workweeks x average hourly rate of $16.50 x 1.5 overtime rate = $306,306
- Meal and Rest Break Claims: 476 employees x 26 workweeks x $16.50 x 1 days per week x 2 is additional hour penalty = $408,408
- Minimum Wage Claims: Unpaid minimum wage (476 employees x 26 workweeks x $16.50 minimum wage = $204,204) + Liquidated damages ($204,204) + Penalties ($100 initial failure to timely pay + $250 for each subsequent pay period = $1,475,600) = $1,884,008.
- Waiting Time Penalty Claim: 296 full-time hourly employees x $16.50 average hourly rate x 8 hours x 30 days = $1,172,160
- Wage Statement Claim: (476 wage statements x $50 = $23,800) + (476 wage statements x 12 subsequent violations x $100 = $571,200) = $595,000
- Attorneys' Fees: 25% x total claimed ($4,365,882) = $1,091,471

This brings the total amount in controversy to $5,457,353. While Defendant points to other factors in arguing that its estimates are conservative, the Court need not weigh these factors since the amount in controversy using the assumptions described above already exceeds $5 million. Remand Opp. 21–23.

---

[1] Defendant only states that "25% attorney fee calculations are an appropriate benchmark when calculating the amount in controversy under CAFA." Remand Opp. 20.

11

### C. CAFA Exceptions

Even when a removing defendant shows that removal is otherwise proper, the district court "may also be required to decline jurisdiction under two exceptions: 28 U.S.C. § 1332(d)(4)(A), the 'local controversy' exception, and 28 U.S.C. § 1332(d)(4)(B), the 'home-state controversy' exception." *Corsino v. Perkins*, No. CV0909031 MMM-CWX, 2010 WL 317418, at *4 (C.D. Cal. Jan. 19, 2010).

Under the "local controversy exception," district courts "shall decline" to exercise CAFA jurisdiction when "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed," at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted is a citizen of the State in which the action was originally filed, and the principal injuries occurred in the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(A). There also must be "no other class action . . . filed asserting the same or similar factual allegations against any of the defendants" by the same persons within the 3-year period preceding the filing of that class action." *Id.* The local controversy exception "is a narrow one." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015). The "home-state controversy" exception requires the district court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

While the defendant bears the burden of proving that removal is appropriate, a plaintiff bears the burden of showing that either exception applies. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("[A]lthough the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B).").

Plaintiff argues that because her amended complaint clarifies that the proposed class consists solely of individuals who reside in California, she necessarily meets the local controversy and home-state controversy requirements. Remand Reply 6–7. As explained above in response to

12

Plaintiff's challenge regarding minimal diversity, *Broadway Grill* guides the Court to focus only on the operative complaint at the time of removal. 856 F.3d at 1277. Thus, the Court cannot look to the FAC's amendment of the class definition to include only citizens of California, when the original Complaint did not contain this limitation.

Plaintiff additionally argues that "[b]ecause Plaintiff's complaint expressly limits the putative class to individuals employed in California, it is clear that more than two-thirds of the putative class members are citizens of California." Remand Reply 7. The Court disagrees, and notes that a similar argument was rejected by the Ninth Circuit in *Mondragon v. Capital One Auto Finance*, 736 F.3d 880 (9th Cir. 2013). There, the plaintiff argued that the proposed class definition necessarily supported the inference that the exception applied because most consumers who purchase and register cars in California are presumably California citizens. The Ninth Circuit agreed with the district court that plaintiff did not provide evidence to support a finding that two-thirds of the putative class were local citizens. "A pure inference regarding the citizenship of prospective class members may be sufficient if the class is defined as limited to citizens of the state in question, but otherwise such a finding should not be based on guesswork." *Id.* at 882.

Recently, a district court followed this reasoning in a case with facts almost identical to those here. *See Ramirez v. Carefusion Res., LLC*, No. 18-CV-2852-BEN-MSB, 2019 WL 2897902, at *7 (S.D. Cal. July 5, 2019). The court in *Ramirez* rejected Plaintiff's arguments that the local and home state exceptions applied because the class members were employed in California. The court reasoned that "Plaintiff's class definition is not "limited to citizens of the state in question," . . . [and], as in *Mondragon*, it is just as likely that many of the putative class member employees—although employed at one time by Defendant in California—are no longer California citizens. For example, people move into and out of the State of California every day, particularly after separating from their employment." *Id.* This reasoning is compelling, especially given the Ninth Circuit's narrow application of these exceptions.

Plaintiff provides no evidence outside of the class definition. While Plaintiff points to Defendant's identification of only six non-citizens, it is not Defendant's burden to show that more than one-third of the class members are non-citizens. It is Plaintiff's burden to show that more

13

than two-thirds of the proposed class members are citizens of California, and Plaintiff fails to do so. *See also id.* at *6 (finding defendant's "admission" that the class members are primarily California citizens "is not enough, and Plaintiff fails to carry her burden."). Accordingly, the Court finds that neither exception applies in this case.

The Court thus **DENIES** Plaintiff's motion to remand.

## IV. MOTION TO DISMISS

Defendant argues that Count Six of the FAC, alleging that Defendants failed to provide complete and accurate wage statements, should be dismissed for failure to plead sufficient facts to support a cognizable claim. In this claim, Plaintiff alleges that "Defendants have intentionally and willfully failed to provide Plaintiff and other class members with complete and accurate wage statements. The deficiencies include, but are not limited to: the failure to include the accurate total number of hours worked by Plaintiff and the other class members, as a result of Defendants' failure to keep accurate records of the total number of hours worked and failure to keep accurate records of meal periods actually taken by Plaintiff." FAC ¶ 95. Defendant argues that because California Labor Code section 226(a) is aimed at ensuring that employees are properly informed regarding their paid wages, "Plaintiff has not alleged that the wage statements were deficient in documenting her 'paid wages;' instead, she is merely attempting to use [California] Labor Code Section 226(a) to obtain a 'double recovery,' which, is improper." Dismiss Mot. 7.

Section 226(a) itemizes nine pieces of information which California employers must include in a wage statement. It provides:

> (a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions . . ., (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . .

14

1  Cal. Labor Code § 226(a). Plaintiff must suffer an injury due to the "knowing and intentional
2  failure by an employer to comply with subdivision (a)." *Id.* § 226(e)(1). "In short, while the
3  statute requires nine categories of information to be included in a wage statement, injury is only
4  presumed if one of five specific categories is omitted, and, even then, only if a reasonable person
5  would be unable to readily ascertain the missing information without reference to other documents
6  or information." *Maldonado v. Epsilon Plastics, Inc.*, 232 Cal. Rptr. 3d 461, 481 (Cal. Ct. App.
7  2018), *review denied* (Aug. 22, 2018).

Plaintiff argues that Defendant's policy of automatically deducting 30 minutes from each shift exceeding six hours and five minutes underlies its allegations regarding this cause of action. Dismiss Opp. 8; FAC ¶ 64. Plaintiff alleges that as a result, "Plaintiff and the putative class members were unable to determine the total amount of the hours they worked, were unable to determine the total amount of compensation they were owed, and were unable to verify they were paid the proper amount." FAC ¶ 96. The FAC sufficiently states a claim under § 226(a) (failure to provide the total hours worked by the employee on wage statements due to the automatic deduction policy) and sufficiently alleges injury. *See Castillo v. Bank of Am. Nat'l Ass'n*, No. SAC-V17-0580-DOCK-ESX, 2018 WL 1409314, at *7 (C.D. Cal. Feb. 1, 2018) ("Injuries from a failure to provide an accurate pay statement include 'possibility of not being paid overtime, *employee confusion over whether they received all wages owed them*, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked.") (emphasis in original).

Defendant's reliance on *Maldonado* is unpersuasive. *See Maldonado*, 232 Cal. Rptr. 3d at 480 n.14 (distinguishing a case where "there was no suggestion that the wage statements were inaccurate due to timeclock rounding or the fact that the meal period was simply included in 12 hours of paid work, rather than separately itemized."). Here, Plaintiff's allegations are sufficient.

//

//

## V. CONCLUSION

For the reasons noted above, the Court **DENIES** Plaintiff's motion to remand, finding that Defendant has met its burden to show removal was proper under CAFA. The Court also **DENIES** Defendant's motion to dismiss Plaintiff'sسسsixth cause of action, finding that Plaintiff has sufficiently alleged facts to support a cognizable claim. The parties are **DIRECTED** to meet and confer and submit a proposed scheduling order consistent with the discussion at the October 10, 2019 hearing. The parties shall submit a proposed scheduling order by November 7, 2019.

**IT IS SO ORDERED.**

Dated: 10/25/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge