Edwin Aiwazian (SBN 232943)
edwin@ calljustice.com
Arby Aiwazian (SBN 269827)
arby@ calljustice.com
Jenay Younger (SBN 327627)
jenay@calljustice.com
Kenyon Harbison (SBN 260416)
kenyon@calljustice.com
**LAWYERS for JUSTICE, PC**
410 Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

Graham B. LippSmith (SBN 221984)
g@lippsmith.com
Celene Chan Andrews (SBN 260267)
cca@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 344-1820 / Fax: (213) 513-2495

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE KASTLER, SAUL ANDRADE and ANTHONICIA STALLINGS, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>GARTEN, INC., formerly known as OH MY GREEN, INC., an unknown business entity,<br><br>Defendant. | Case No.: 4:19-CV-02411-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF COUNSEL (EDWIN AIWAZIAN AND GRAHAM B. LIPPSMITH); DECLARATION OF PROPOSED CLASS REPRESENTATIVES (ANNE KASTLER, SAUL ANDRADE, ANTHONICIA STALLINGS); DECLARATION OF PROPOSED SETTLEMENT ADMINISTRATOR (KIMBERLY SUTHERLAND); AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH]**<br><br>Date:    July 22, 2021<br>Time:    2:00 p.m.<br>Dept.:    2-Fourth Floor<br><br>Complaint Filed: February 28, 2019 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 22, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2, 4th Floor (Oakland) of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Anne Kastler, Saul Andrade and Anthonicia Stallings ("Plaintiffs" or "Class Representatives") hereby move for an order:

1. Granting preliminary approval of the April 30, 2021 Stipulation of Class Action and PAGA Settlement and Release of Claims ("Settlement[1]") between Plaintiffs and Defendant Garten, Inc. formerly Oh My Green, Inc. ("Defendant");

2. Granting provisional certification of the Class for settlement purposes;

3. Provisionally appointing Plaintiffs Anne Kastler, Saul Andrade, and Anthonicia Stallings as Class Representatives;

4. Provisionally appointing Lawyers *for* Justice, PC and LippSmith LLP as Class Counsel;

5. Appointing Simpluris, Inc. ("Simpluris") to serve as the Settlement Administrator and approving the Notice Plan Simpluris has provided;

6. Approving the Notice, attached as Exhibit 1 to the Settlement;

7. Directing Simpluris to effectuate the Notice Process, including mailing Notice to Class Members;

8. Scheduling a Final Approval Hearing, at which time the Court will also consider whether to grant final approval of Plaintiffs' requests for Attorney Fees and Costs, an Enhancement Award for Plaintiffs, and Settlement Administration Costs.

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), which governs court approval of class action settlements; Federal Rule of Civil Procedure 23(g), which governs court appointment of class counsel; and Labor Code section 2699, which sets forth PAGA provisions.

---

[1] To the extent they are not specifically defined herein, all capitalized terms have the same meaning as in the April 30, 2021 Settlement, attached Exhibit 1, to the Declaration of Graham B. LippSmith in Support of this Motion.

All Parties have signed the Settlement. Defendant does not oppose and joins in this Motion.

Plaintiffs have submitted the Settlement to the California Labor and Workforce Development Agency ("LWDA") concurrently with this Motion pursuant to Labor Code section 2699(l)(2). Plaintiffs have also satisfied the prerequisites under Labor Code section 2699.3(a), including, but not limited to, providing the LWDA and the employer with written notice of the specific provisions of the Labor Code they allege Defendant violated, including the facts and theories to support the alleged violations, by way of written correspondence sent U.S. Certified Mail on April 28, 2021. Plaintiffs will update the Court if the LWDA responds to the letter that was sent on Plaintiffs' behalf.

Based on (1) the following memorandum of points and authorities, (2) the Declaration of Edwin Aiwazian; (3) the Declaration of Graham B. LippSmith, with Settlement attached as Exhibit 1; (4) the Declaration of Anne Kastler; (5) the Declaration of Saul Andrade; (6) the Declaration of Anthonicia Stallings; (7) the Declaration of Kimberly Sutherland; and (8) the [Proposed] Order Granting Preliminary Approval of Class Action and PAGA Settlement filed concurrently herewith, the pleadings and other records on file with the Court in this matter, and the evidence and oral argument that may be presented at the hearing on this motion, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

Dated: May 3, 2021

**LIPPSMITH LLP**

By: _____

Graham B. LippSmith
Celene Chan Andrews

**LAWYERS** *for* **JUSTICE, PC**

Edwin Aiwazian
Arby Aiwazian
Jenay Younger
Kenyon Harbison

Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO.: 4:19-CV-02411-HSG

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................. 2

III. SUMMARY OF SETTLEMENT TERMS ............................................................... 3

IV.  LEGAL STANDARD .......................................................................................... 6

V.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL ............................... 6

    A.   The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations That Considered the Strengths and Weaknesses of Plaintiffs' Case, the Risk of Further Litigation, Defendant's Dire Financial Condition, and the Amount Offered in Settlement ................................. 7

        1.   The Settlement Resulted from Arm's-Length Bargaining ......................... 7

        2.   The Settlement Resulted from Extensive Investigation and Discovery, Allowing the Court and Counsel to Act Intelligently ............ 10

    B.   The Settlement Does Not Grant Improper Preferential Treatment to Class Representatives or Other Segments of the Class .................................. 11

    C.   The Settlement Falls Within the Range of Possible Approval ............................ 11

    D.   The Settlement Has No Obvious Deficiencies .................................................... 16

VI.  CERTIFICATION OF THE CLASS IS APPROPRIATE ............................................ 16

    A.   The Class Is Sufficiently Numerous and Ascertainable ...................................... 17

    B.   The Class Members Share Common Questions of Law and Fact ....................... 17

VII. THE COURT SHOULD PROVISIONALLY APPOINT CLASS REPRESENTATIVES ........ 19

VIII. THE COURT SHOULD PROVISIONALLY APPOINT CLASS COUNSEL .......................... 20

IX.  THE COURT SHOULD APPOINT SIMPLURIS AS SETTLEMENT ADMINISTRATOR ................................................................................................ 22

X.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE ............................... 23

XI.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN DEADLINES ........... 23

XII. CONCLUSION ...................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Amalgamated Transit Union v. Superior Court* (2009) 46 Cal. 4th 993 ................................. 8

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) ............................... 9

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014) ........................... 17

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ................................. 16

*Carter v. Anderson Merch., LP*, 2010 WL 1946784 (C.D. Cal. May 11, 2010) .................. 15

*Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................ 15

*Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .......................... 12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................... 6

*DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970) ................................... 17

*Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal. 2008) ..................... 8

*Giroux v. Essex Prop. Tr., Inc.,* 2018 WL 2463107 (N.D. Cal. June 1, 2018) ................... 6

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F. 3d 1011 ........................... 6

*Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............ 7

*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) ............................ 6

*Kullar v. Foot Locker Retail*, 168 Cal. App. 4th 116 (2008) ............................. 9

*In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018).. 6

*Lilly v. Jamba Juice Co.*, 2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ............................ 17

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ............................ 16

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (2000) ................................. 17

*Litty v. Merrill Lynch & Co.*, No. cv 14-0425 PA (PJWx),

    2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ............................... 8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...................... 16

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ............................ 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP (N.D. Cal. Apr. 2, 2010).................. 14

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................................................. 11

*Rose v. City of Hayward*, 126 Cal. App. 3d 926 (1981) ........................................................................ 17

*Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG (N.D. Cal. Nov. 4, 2020).............. 21

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)..................................................................................... 23

*Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-cv-1187 KJM CKD,

    2014 WL 6633396 (E.D. Cal. Nov. 21, 2014) .................................................................................. 8

*In re Syncor ERISA Litig*, 516 F.3d 1095 (9th Cir. 2008) ...................................................................... 6

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................... 11

*Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192 (N.D. Cal. 2012)................................................... 17

*Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG,

    2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ............................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................................... 16, 18

*Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005),

    *rev'd and vacated on other grounds*, 737 F.3d 538 (9th Cir. 2013) (en banc) ................................. 19

**Statutes**

Lab. Code § 203 .................................................................................................................................... 13

Lab. Code § 226 .................................................................................................................................... 13

Lab. Code § 226.7 ................................................................................................................................. 12

Lab. Code § 510 .................................................................................................................................... 12

Lab. Code § 512(a) ............................................................................................................................... 12

Lab. Code § 1197.1 ............................................................................................................................... 13

Lab. Code §1198.................................................................................................................................... 12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO.: 4:19-CV-02411-HSG

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

Lab. Code § 2699(e)(2) ........................................................................................................ 9

Lab. Code § 2699(f)(2) ........................................................................................................ 8

Lab. Code § 2699(i) ...................................................................................................... 15, 16

Lab. Code § 2699(j) ........................................................................................................... 15

**Other Authorities**

Conte & Newberg, Newberg on Class Actions § 8.21 (4th Ed.) ........................................ 23

Newberg Conte, *Newberg on Class Actions* § 11.26 ........................................................ 23

Newberg Conte, *Newberg on Class Actions* § 11.47 ........................................................ 15

**Rules**

Fed. R. Civ. P. 23(a)(1) ..................................................................................................... 17

Fed. R. Civ. P. 23(a)(2) ..................................................................................................... 18

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 17

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 23

Fed. R. Civ. P. 23(e)(1) ..................................................................................................... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Anne Kastler, Saul Andrade and Anthonicia Stallings ("Plaintiffs") respectfully request preliminary approval of the April 30, 2021 Settlement Agreement ("Settlement") between Plaintiffs and Defendant Garten, Inc. formerly Oh My Green, Inc. ("Defendant"). Declaration of Graham B. LippSmith ("LippSmith Dec."), Ex. 1 ("Settlement"). Plaintiffs and Defendant (the "Parties") have agreed to settle this matter for a Gross Settlement Fund in the amount of $500,000.00. *Id.* at ¶ 11.

The Gross Settlement Fund will be distributed as follows: (1) individual settlement payments to claimants; (2) $50,000 in penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA Penalties"); (3) Claims Administration Costs ("Administration Costs"); (4) Enhancement Awards to Plaintiffs; and (5) attorney fees and reimbursement of litigation costs and expenses to Class Counsel ("Attorney Fees and Costs"). Settlement, ¶ 11. The Net Settlement Fund is the Gross Settlement Fund less the PAGA Penalties, Administration Costs, Enhancement Awards, and Attorney Fees and Costs. *Id.* at ¶ 12. Plaintiffs also seeks provisional certification of the following Class solely for settlement purposes: All current and former non-exempt employees who worked for Defendant within California at any time during the period between February 28, 2015 and preliminary approval ("Class" or "Class Members"). *Id.* at ¶ 7.

The Class is comprised of approximately 684 individuals. LippSmith Dec., ¶ 25. Each Class Member who does not opt out of the Settlement will receive a pro rata share of the Net Settlement Fund based upon the number of weeks worked, per the Class definition ("Individual Settlement Share"). Settlement, ¶ 13. Each Class Member who worked for Defendant during the PAGA Period ("PAGA Recipients"), will receive a pro rata share of 25% of the PAGA Payment ($12,500), based on the number of PAGA Workweeks credited to each of them. *Id.* at ¶ 18. The remaining 75% of the PAGA Payment ($37,500) will be paid to the California Labor and Workforce Development Agency ("LWDA"). *Id.*

The Settlement resolves all of the Released Claims of Plaintiffs and all Class Members who

1  do not opt out ("Settlement Class Members") against the Released Parties. Settlement, ¶¶ 30–32.

2  ## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

3      Defendant Garten, Inc. formerly known as Oh My Green, Inc. provides food and beverage

4  preparation, catering, and delivery services to companies and offices, with an emphasis on healthy

5  and nutritious options. Defendant formerly employed Plaintiffs.

6      Plaintiff Kastler filed a Class Action Complaint for Damages against Defendant in San

7  Mateo County Superior Court on February 28, 2019. The case was removed to this Court on May 2,

8  2019. Plaintiffs' Counsel have litigated this matter actively since its inception and engaged in

9  substantial review of records and data, met and conferred several times regarding motion

10 practice and discovery, propounded and responded to written discovery, and noticed, prepared for,

11 and took a deposition. Declaration of Edwin Aiwazian ("Aiwazian Dec."), ¶ 18.

12      On April 29, 2021, Plaintiffs filed a Second Amended Complaint in which Plaintiffs allege

13 that Defendant engaged in uniform practices and procedures that violate the Labor Code: failure to

14 pay regular, minimum, and overtime wages properly, including their rounding policy; failure to pay

15 all compensation due for all work performed, including pre-shift, post-shift, and meal and rest

16 periods wages; failure to accurately calculate the regular rate for meal, rest, and overtime

17 premiums; failure to provide compliant meal periods, rest periods, and associated premium pay;

18 failure to pay timely wages during employment and upon termination or resignation; failure to

19 provide compliant wage statements; failure to maintain requisite payroll records; and failure to

20 reimburse necessary business expenses. Settlement, ¶ 3. Plaintiffs also allege Defendant's conduct

21 gives rise to PAGA penalties. *Id.* Plaintiffs contend the putative class is entitled to unpaid wages;

22 penalties, including PAGA penalties; and attorney fees and costs.

23      Defendant denies any liability or wrongdoing associated with Plaintiffs' allegations.

24 Settlement, ¶ 4. It also denies this case is appropriate for class treatment for any purpose other than

25 settlement. *Id.*

26      The Parties have conducted formal and informal discovery, investigation of the claims, and

27 extensive discussions about the strengths and weaknesses of the claims and defenses. Aiwazian

28 Dec., ¶ 18. The Parties ultimately agreed to the Settlement.

## III.    SUMMARY OF SETTLEMENT TERMS

The Settlement provides that Defendant will pay $500,000 into a Gross Settlement Fund. Settlement, ¶ 11. The Gross Settlement Fund will cover (1) individual settlement payments to Class Members, calculated as set forth below; (2) $50,000 in PAGA Penalties; (3) Administration Costs; (4) an Enhancement Award to Plaintiffs; and (5) Attorney Fees and Costs. *Id.* The Parties also agree to provisional Class certification, strictly and solely for the purposes of Settlement. *Id.* at ¶ 4.

The Net Settlement Fund is the Gross Settlement Fund less the PAGA Payment, Administration Costs, Enhancement Award, and Attorney Fees and Costs. Settlement, ¶ 12. The Settlement provides for a $50,000 PAGA Payment. *Id.* at ¶ 18. In addition, the Parties agreed to retain Simpluris, Inc. to handle the notice and settlement administration process. *Id.* at ¶ 21. The Settlement provides for $11,000 to cover Administration Costs. *Id.* at ¶ 17. Plaintiffs' Counsel also will apply for Enhancement Awards of $7,500 for Plaintiff Kastler, $5,000 for Plaintiff Andrade, and $5,000 for Plaintiff Stallings for their service as Class Representatives. *Id.* at ¶ 16. The differential in proposed awards reflects that Plaintiffs Andrade and Stallings joined in this litigation after Plaintiff Kastler. Finally, Plaintiffs' Counsel will apply for attorney fees in the amount of $175,000, or 35% of the Gross Settlement Fund, as well as for reimbursement of reasonable litigation costs and expenses not to exceed $40,000. *Id.* at ¶¶ 14, 15.

The Net Settlement Fund will be distributed pro rata to Settlement Class Members. Settlement, ¶¶ 12, 13. The Settlement Administrator will facilitate the calculation of each Settlement Class Member's pro rata share of the Net Settlement Fund ("Individual Settlement Share") as follows:

- Defendant will use time records to calculate Workweeks. Settlement, ¶ 13. Workweeks reflect the total number of weeks all Settlement Class Members worked as non-exempt employees in California during the Class Period. *Id.* Any calendar week in which a Class Member worked at least one day will be considered a Workweek. *Id.* The parties estimate that the Class Period includes 18,401 Workweeks. *Id.* at ¶ 35.

- Within 14 days of preliminary approval, Defendant will provide the Settlement Administrator with the total number of Workweeks all Class Members worked in the aggregate, as well as the number of Workweeks each individual Class Member worked. *Id.* at ¶¶ 13, 23.

- The Settlement Administrator will calculate each Settlement Class Member's share of the Net Settlement Fund. To calculate each share, the Settlement Administrator will divide the Net Settlement Fund by the total number of Class Workweeks, then multiply by the number of weeks each Settlement Class Member worked. *Id.* at ¶ 13.

The Settlement allocates $50,000 to PAGA Penalties. Settlement, ¶ 18. Of this, 75% ($37,500) will be paid to the LWDA. The remaining 25% ($12,500) will be paid on a pro rata basis to Class Members who worked for Defendant during the PAGA Period. *Id.* The Settlement Administrator will calculate each PAGA Payment by dividing $25,000 by the total number of PAGA Workweeks, then multiplying by the number of weeks each Class Member worked. *Id.*

The Settlement provides for tax treatment, allocating 33.33% of Individual Settlement Shares to wages reported on an IRS Form W-2, 66.67% to non-wages and interest reported on an IRS Form 1099, and 100% of PAGA Payments as penalties on IRS Form 1099. Settlement, ¶ 19. The Settlement Administrator will withhold deductions for employees' share of payroll taxes and withholdings from Individual Settlement Shares but not PAGA Payments. *Id.* The Settlement Administrator will issue each Settlement Class Member an individual settlement payment, reduced by the applicable withholdings. *Id.* Defendant will cover its portion of payroll taxes, in addition to the Gross Settlement Fund. *Id.*

Class Members may opt out of the Settlement by mailing a completed request to be excluded ("Request for Exclusion") to the Settlement Administrator within 35 calendar days of the mailing of the Notice ("Response Deadline"). Settlement, ¶¶ 24, 25. The signed Request for Exclusion must include the Class Member's full name, address, and telephone number; the name and case number of this matter; a wish to be excluded from the Settlement; and that the Class Member understands they will not receive any money from the Settlement. *Id.* at 25. A Class Member who opts out will not be entitled to an Individual Settlement Share but can still receive a pro rata PAGA Payment, if eligible. *Id.* A Class Member who opts out will not be bound by the terms of the Settlement, except for the release of Released Claims that arise under PAGA, if eligible for a PAGA Payment. *Id.* Any Class Member who opts out cannot object, appeal, or comment on the Settlement. *Id.* Failure to submit a valid and timely Request for Exclusion means the Class Member is bound by all terms of the Settlement and any final judgment entered in this case. *Id.*

The Notice shall inform Class Members of the number of workweeks they worked during

4

the Class Period and PAGA Period based on Defendant's records. Settlement, ¶ 23. Class Members may dispute this information by providing the Settlement Administrator with additional information and documentation ("Dispute") postmarked on or before the Response Deadline. *Id.* at ¶ 27. A Class Member must submit a signed Dispute, with the Class Member's full name, the case name and number, number of workweeks the Class Member claims they worked, and supporting documentation. *Id.* The Settlement Administrator will consult with the Parties to determine whether to make an adjustment to the Individual Settlement Share or PAGA Payment. *Id.* As a last resort, the Parties will bring any unresolved Disputes to the Court. *Id.*

Within five calendar days, the Settlement Administrator shall remail to the forwarding address any Notice returned as non-delivered on or before the Response Deadline. Settlement, ¶ 28. If no forwarding address is provided, the Settlement Administrator shall attempt to find a correct address promptly, using skip-tracing or other methods for searching the name, address and/or Social Security number of the Class Member involved. *Id.* Upon locating another address, the Settlement Administrator shall then remail the Notice. *Id.* Class Members who receive a remailed Notice shall have 14 calendar days from the postmark date of the remailed Notice to object or opt-out. *Id.*

Settlement Class Members who object to the Settlement must submit either a written statement objecting or a written notice of intention to appear at the Final Approval Hearing and object ("Objection") to the Settlement Administrator. Settlement, ¶ 26. The Objection must be postmarked on or before the Response Deadline. *Id.* The Settlement Administrator will notify all Parties of any Objection within five business days of receipt, and Plaintiffs will file any such Objection(s) with the Court before the Final Approval Hearing. *Id.* The Settlement Class Member must sign the Objection; reference the case name and number; and include the Class Member's name, dates of employment, grounds for objection, intention to appear at the Final Approval Hearing, and any legal briefs, papers, or memoranda the Settlement Class Member proposes to submit to the Court. *Id.* Settlement Class Members who fail to take these steps may still appear in Court at the Final Approval Hearing to state their objection. *Id.* Any Settlement Class Member who does not submit an Objection or appear in Court to object at the Final Approval Hearing waives their right to object and cannot object to the Settlement, whether by appeal or otherwise. *Id.* Neither

1    the parties nor their counsel shall solicit or encourage Objections. *Id.* The Settlement Administrator

2    shall provide the Parties with weekly updates regarding the status of any Objections. *Id.*

3         Settlement checks uncashed after 120 days of issuance shall be tendered to the State

4    Controller's Office, Unclaimed Property Division in the name of the Settlement Class Member and

5    shall indicate the amount of the cancelled check. Settlement, ¶ 29. There is no reversion to

6    Defendant of any of the settlement funds.

7         The Settlement will resolve the Released Claims of Plaintiffs and all Class Members who do

8    not opt out of the Settlement ("Settlement Class Members"). Settlement, ¶ 30.

9    **IV.    LEGAL STANDARD**

10        Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a

11   certified class—or a class proposed to be certified for purposes of settlement—may be settled . . .

12   only with the court's approval." Rule 23 is intended to "protect the unnamed members of

13   the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*, 516

14   F.3d 1095, 1100 (9th Cir. 2008). In approving a class action settlement, the court must conclude

15   that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig*., 546

16   F.3d 667, 674–75 (9th Cir. 2008). In granting preliminary approval of a class action settlement,

17   courts must determine whether provisional class certification is appropriate. *See Giroux v. Essex*

18   *Prop. Tr., Inc.,* 2018 WL 2463107, at *3 (N.D. Cal. June 1, 2018).

19   **V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

20        Courts may preliminarily approve a settlement and notice plan to the class if the proposed

21   settlement: (1) appears to be the product of serious, informed, non-collusive negotiations, (2) does

22   not grant improper preferential treatment to class representatives or other segments of the class,

23   (3) falls within the range of possible approval, and (4) has no obvious deficiencies. *In re Lenovo*

24   *Adware Litig*., No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018).

25   Courts give "deference to the private[,] consensual decision of the parties." *Hanlon v. Chrysler*

26   *Corp.,* 150 F. 3d 1011, 1027 (9th Cir. 1998). The Ninth Circuit maintains a "strong judicial policy

27   that favors settlements" of class actions, given "complex" litigation involved. *Class Plaintiffs v.*

28   *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

A. **The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations That Considered the Strengths and Weaknesses of Plaintiffs' Case, the Risk of Further Litigation, Defendant's Dire Financial Condition, and the Amount Offered in Settlement**

The Settlement accounts for the strengths and weaknesses of each Party's position and the uncertainty about class certification, trial, or both. Aiwazian Dec., ¶¶ 21–26; LippSmith Dec., ¶¶ 25–26. Prior to agreeing to settle this matter, the Parties interviewed and obtained information from witnesses. Aiwazian Dec., ¶ 18. The Parties' Counsel reviewed documents and information relating to Plaintiffs' and Class Members' employment with Defendant and performed significant legal research concerning PAGA representative actions, class certification, off-the-clock theory, meal and rest periods, wage-and-hour enforcement, the Parties' claims and defenses, and the facts. Aiwazian Dec., ¶¶ 17–19; LippSmith Dec., ¶¶ 24–25. The Parties and their Counsel also considered Defendant's dire financial condition. LippSmith Dec. ¶¶ 26–27.

1. **The Settlement Resulted from Arm's-Length Bargaining**

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Prior to agreeing to the Settlement, the Parties engaged in significant settlement negotiations and participated in two formal mediation sessions. Aiwazian Dec., ¶¶ 7, 26; LippSmith Dec., ¶¶ 26–28. The Honorable Michael Latin (Retired) and the Honorable Howard Broadman (Retired), well-regarded mediators experienced in mediating labor and employment matters, conducted the first and second mediations, respectively. Aiwazian Dec., ¶ 7; LippSmith Dec., ¶¶ 25–27. The parties' first mediation on April 1, 2020, before the Honorable Judge Latin, did not result in a resolution. Aiwazian Dec., ¶ 7. At that time, Defendant cited financial distress due to Covid-19 and the effects of the pandemic on Defendant's primary business model, *i.e.*, providing and distributing healthy snacks to offices. *Id*. According to testimony from Defendant's Rule 30(b)(6) witness, Defendant had implemented massive layoffs to salvage funds, shuttered the majority of its operations, and experienced severe depletions in revenue. LippSmith Dec. ¶ 26.

1    Prior to and during settlement discussions, the Parties exchanged class and financial

2  information and engaged in an intensive discussion about their evaluations of this matter and

3  various aspects of this case, including the risks and delays of further litigation, especially

4  Defendant's financial condition; whether some claims were subject to dismissal; the risks of

5  proceeding with representative adjudication and class certification; the law on off-the-clock theory,

6  meal and rest periods, wage-and-hour enforcement, and PAGA representative claims; and the

7  evidence the Parties obtained, produced, and analyzed. Aiwazian Dec., ¶ 17; LippSmith Dec., ¶ 25.

8    Specifically, the Parties spent considerable time evaluating the procedural challenges that

9  continued litigation may pose. Although wage-and-hour actions are often amenable to resolution for

10  groups of employees, courts sometimes decide otherwise. For instance, some courts have required

11  "manageability" for adjudicating PAGA claims. *See, e.g.*, *Litty v. Merrill Lynch & Co.,* No. cv 14-

12  0425 PA (PJWx), 2015 WL 4698475 at *3–4 (C.D. Cal. Apr. 27, 2015) (dismissing PAGA claim

13  that would require a multitude of individualized assessments). Other courts considering PAGA

14  claims have required plaintiffs to establish standing and have bifurcated discovery, trial, or both.

15  *Amalgamated Transit Union v. Superior Court,* 46 Cal. 4th 993, 1001 (2009) (noting PAGA

16  "require[s] a plaintiff to have suffered an injury resulting from an unlawful action"); *Stafford v.*

17  *Dollar Tree Stores, Inc.,* No. 2:13-cv-1187 KJM CKD, 2014 WL 6633396 at *4 (E.D. Cal. Nov. 21,

18  2014) (finding judicial economy supported bifurcation because of the difficulties and inherent

19  uncertainties in establishing liability with respect to a large number of potentially aggrieved

20  employees). These issues add uncertainty to continued litigation.

21    The parties also spent considerable time evaluating the substance of their claims and

22  defenses in deciding to settle. To prevail on their claims, Plaintiffs must prove that Labor Code

23  violations demonstrate both that Aggrieved Employees suffered losses and that Defendant's

24  conduct gives rise to penalties. *See*, *e.g.*, *Elliot v. Spherion Pac. Work, LLC,* 572 F. Supp. 2d 1169,

25  1181–82 (C.D. Cal. 2008). Even if Plaintiffs established violations, Defendant likely would

26  characterize those violations as "initial," thus, making heightened "subsequent violation" penalties

27  unwarranted. *See* Lab. Code § 2699(f)(2); *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157,

28  1209 (2008) ("Until the employer has been notified that it is violating a Labor Code provision [. . .],

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties."). Plaintiffs' ultimate success on the merits is uncertain.

Finally, the Parties spent considerable time evaluating the potential litigation of remedies. Although PAGA clearly sets forth penalties, courts have discretion in setting those penalties, so that they are not "unjust, arbitrary and oppressive, or confiscatory." *See* Lab. Code § 2699(e)(2).

Despite these challenges, Plaintiffs' Counsel negotiated a Gross Settlement Fund of $500,000. Aiwazian Dec., ¶ 9; LippSmith Dec., ¶ 28. The Parties calculated the Settlement using information uncovered during case investigation, litigation, exchange of information for mediation, and Defendant's financial condition. Aiwazian Dec., ¶ 18; LippSmith Dec., ¶ 27. If the Court approves the PAGA Payment, Administration Costs, Enhancement Award, and Attorney Fees and Costs in the Settlement, the Net Settlement Fund is estimated to be at least $206,500.00. Aiwazian Dec., ¶ 9; LippSmith Dec., ¶ 28. The amount of each Claimant's Individual Settlement Share and each PAGA Recipient's Settlement Share will be calculated based on their respective Workweeks. Settlement, ¶ 13. Plaintiffs' Counsel's analysis allowed them to estimate the potential claims on behalf of the Class and State of California and to "conclude[e] that the consideration being paid for the release of those claims represents a reasonable compromise." *Kullar v. Foot Locker Retail,* 168 Cal. App. 4th 116, 133 (2008); Aiwazian Dec., ¶ 17, 21-27; LippSmith Dec., ¶ 27. Considering all the facts and circumstances of the Action, the Settlement represents a fair, reasonable, and adequate recovery for the Class. Aiwazian Dec., ¶¶ 28–29; LippSmith Dec., ¶ 38.

During all settlement discussions, the Parties conducted their negotiations at arm's length, in an adversarial position. Aiwazian Dec., ¶ 17; LippSmith Dec., ¶ 25. The Parties each believed in the merits of their claims and defenses. Aiwazian Dec., ¶ 17; LippSmith Dec., ¶ 26. Defendant and their counsel believed they would prevail at certification and on the merits. Plaintiffs and their Counsel felt strongly they would obtain class certification and win at trial. After conducting investigations and a deposition, propounding formal discovery, exchanging informal discovery, and participating in settlement negotiations, the Parties agreed this case is well-suited for settlement, given the claims, defenses, legal landscape, costs and risks of continued litigation, and Defendant's precarious financial condition. Aiwazian Dec., ¶ 17; LippSmith Dec., ¶ 27.

### 2.    The Settlement Resulted from Extensive Investigation and Discovery, Allowing the Court and Counsel to Act Intelligently

The Parties have actively litigated this matter since it commenced on February 28, 2019. Prior to reaching the Settlement, the Parties extensively investigated the veracity, strength, and scope of the claims. Aiwazian Dec., ¶ 18; LippSmith Dec., ¶¶ 24, 25. The Parties have reached the Settlement based on this large volume of facts, evidence, and investigation. Aiwazian Dec., ¶ 20.

Plaintiffs' Counsel conducted significant investigation into this case, engaged in formal and informal discovery, reviewed and analyzed thousands of pages of documents and data Defendant produced, and noticed and took one deposition of Defendant's Rule 30(b)(6) witness. Aiwazian Dec., ¶ 18; LippSmith Dec., ¶¶ 21, 25, 28. The volume of data and documents Plaintiffs' Counsel reviewed and analyzed included the following, among others: Plaintiffs' and other Class Members' employment records; a detailed sampling of Class Members' time and pay data, including, but not limited to, spreadsheets of timecard and wage statement statistics; Defendant's Employee Handbooks and California Handbook, manuals, meal period policy/agreement, attendance policies, expense policy, forms, and procedures. Aiwazian Dec., ¶ 18; LippSmith Dec., ¶ 25.

Plaintiffs' Counsel interviewed Plaintiffs and other witnesses to gather facts and identify potential witnesses. Aiwazian Dec., ¶ 18. Plaintiffs' Counsel served and responded to multiple sets of formal written discovery requests and noticed the depositions of Defendant's person-most-knowledgeable designees, taking one deposition and preparing for the other depositions in the event the case did not settle at mediation. *Id.* at ¶¶ 7, 18; LippSmith Dec., ¶ 25. Counsel for the Parties also met and conferred to discuss issues relating to the pleadings, discovery, motion practice, and the production of documents and data. Aiwazian Dec., ¶ 18. Prior to agreeing to mediate this matter, Plaintiffs' Counsel was preparing for Plaintiffs' Motion for Class Certification, including meeting and conferring in writing and telephonically with Defendant's counsel regarding multiple issues, including amending the complaint, Defendant's Rule 30(b)(6) depositions, Plaintiff Kastler's deposition, and the class certification deadlines. *Id.* Plaintiffs' Counsel also prepared for and attended court proceedings and settlement negotiations, including attending mediations. *Id.*; LippSmith Dec., ¶ 21.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

1    The Parties' active litigation of this matter has allowed Counsel to act intelligently in
2    assessing the fairness and reasonableness of the Settlement.

3    **B.      The Settlement Does Not Grant Improper Preferential Treatment to Class**
4          **Representatives or Other Segments of the Class**

5          The proposed settlement allocates the Net Fund to Settlement Class Members on a pro rata
6    basis based on the number of weeks worked. Settlement checks uncashed after 120 days of issuance
7    shall be tendered to the State Controller's Office, Unclaimed Property Division in the name of the
8    Settlement Class Member and shall indicate the amount of the cancelled check. Settlement, ¶ 29.
9    Thus, all Settlement Class Members who cash their initial checks will receive a pro rata amount
10   commensurate with the amount of time worked, and no one will receive preferential treatment.

11         The Settlement authorizes Plaintiffs to seek Enhancement Awards of up to $7,500 for each
12   Plaintiff appointed to serve as Class Representative. The Class will seek up to $7,500 for the
13   original Plaintiff Kastler and up to $5,000 for Plaintiffs Andrade and Stallings since they came
14   forward to assist in investigation and litigation after the original filing. The Ninth Circuit has
15   recognized that incentive awards are permissible and do not render a settlement unfair or
16   unreasonable. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards
17   are fairly typical in class action case."); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)
18   ("[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are
19   eligible for reasonable incentive payments."); "Such awards are discretionary . . . and are intended
20   to compensate class representatives for work done on behalf of the class, to make up for financial or
21   reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to
22   act as a private attorney general. *Rodriguez*, *supra*, 563 F.3d at 958–59 (citation omitted).

23   **C.      The Settlement Falls Within the Range of Possible Approval**

24         "To evaluate the range of possible approval criterion, which focuses on substantive fairness
25   and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of
26   the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.
27   2009) (internal quotation marks and citations omitted). Additionally, to determine whether a
28   settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that

---

11

ultimately inform final approval:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

First, the Class's expected recovery, weighed against the value of the settlement offer and considering the strength of Plaintiffs' case, supports approval of the Settlement.

Unfortunately, Defendant's dire financial circumstances became the driving issue during litigation and both mediations. By the second mediation, the Covid-19 pandemic wiped out nearly all of Defendant's business of supplying healthy snacks to businesses, and Defendant anticipates no imminent recovery. LippSmith Dec. ¶ 26. As discussed, *supra*, in Section V.A.1, Defendant's dire financial circumstances were a significant obstacle for the parties to overcome in order to reach a settlement. Plaintiffs' investigation leading into mediation and information obtained during mediation—including but not limited to open questioning of Defendant by Judge Broadman (Ret.) and Plaintiffs' counsel—confirmed that the expected recovery on this would very well be $0 because Defendant anticipates going under if it cannot resolve these claims. *Id.*

Even in a hypothetical world where Defendant somehow survives the post-pandemic world of employees continuing to work from home, the risks in years of continued litigation, trial, and appeals prove that this bird in hand is indeed better than the two that only might be in the bush. Assuming that every member of the 684-member class was unpaid for one hour for 18,401 workweeks at the average overtime rate of $30.27—which represents a high rate of overtime violations—unpaid overtime damages would be $556,998.27. *See* Lab. Code §§ 510 and 1198; LippSmith Dec. ¶ 25. Assuming one violation of meal and rest break damages for every employee for 18,401 workweeks, meal and rest break damages would be $371,332 based on the average hourly rate of $20.18. *See* Lab. Code §§ 226.7 and 512(a); LippSmith Dec. ¶ 25. Plaintiffs calculated scenarios on Labor Code penalties starting in the $700,000s, but those scenarios assumed every kind of infraction for every employee in every pay period. *See* Lab. Code §§ 203, 226,

1197.1; LippSmith Dec. ¶ 25.

These valuations show high ranges of recoveries at issue here assuming regular violations impacting every employee every week, which will be challenging to prove. More importantly, though, actually achieving these kinds of recoveries requires Plaintiffs to run the table by winning class certification, beating all dispositive motions, qualifying all of their experts and opinions, proving the types and frequencies of violations at trial, beating post-trial motions, and surviving appeals on all of the above in the Ninth Circuit. Each of these hurdles in and of itself represents a major discounting factor so that even Plaintiffs' most outsized hypothetical recovery years from now fairly aligns with what the Settlement provides aggrieved employees today. Even without Defendant's dire financial condition, which risks immediately discounting this case to $0, the Settlement provides a fair recovery to aggrieved employees now, which is probably when they need it most given Defendant's substantial downsizing.

Second, the settlement amount is adequate given the expense, complexity, duration of further litigation, and Defendant's perilous financial condition. To prevail in this action, Plaintiffs would be required to move successfully for class certification pursuant to Rule 23, defeat summary judgment, receive a favorable verdict capable of withstanding a potential appeal, and complete these tasks before Defendant becomes insolvent. The risks and costs associated with class action litigation weigh strongly in favor of settlement.

Third, whether class certification can be maintained through trial also weighs in favor of settlement. Certifying a class composed of 684 current and former employees presents complex issues that could undermine certification at the class certification stage as well as at other, later stages of the litigation.

Fourth, the $500,000 Gross Settlement Fund is reasonable given the stage of the proceedings, the defenses asserted in this action, and Defendant's unhealthy financial condition. The Gross Settlement Fund constitutes a fraction of Defendant's potential statutory damage exposure based on the average hourly rate of $20.18 culled from data sampling, the class size of 684 individuals, the number of pay periods and workweeks, and the estimated number of violations based on data sampling. A review of past comparable class settlements involving the same or

similar clients, claims, and/or issues also shows that the settlement here is fair and falls within the range of possible approval:

| Case | Schwab v. IT'SUGAR, LLC Case No. RG15759877 Alameda Superior Court | Polk v. Community Housing Partnership Case No. CGC-14-541754 San Francisco Superior Court | Martin v. Cal-Am Properties Case No. BC574656 Los Angeles Superior Court |
|---|---|---|---|
| Settlement fund | $150,000.00 | $300,000.00* | $164,000.00 |
| Class members | 31 | 271 | 71 |
| Class members to whom notice was sent | 31 | 271 | 71 |
| Notice method | U.S. mail | U.S. mail | U.S. mail |
| Number and percentage of claim forms submitted | No claims process; auto-pay to Class Members who did not opt out. | No claims process; auto-pay to Class Members who did not opt out. | No claims process; auto-pay to Class Members who did not opt out. |
| Average recovery per class member | $2,265.78 | $579.83* | $1,170.59 |
| Amounts distributed to each cy pres recipient | $12,075.82 to California Department of Industrial Relations Unpaid Wage Fund, in the name of the Participating Class Member who did not cash their checks within the check cashing period. | $2,362.86 to California Department of Industrial Relations Unpaid Wage Fund, in the name of the Participating Class Member who did not cash their checks within the check cashing period. | $2,201.40 to Legal Aid Society-Employment Law Center |
| Administrative costs | Up to $9,000 | Up to $14,000 | Up to $10,000.00 |
| Attorney fees | $49,500.00 | $120,000.00 | $57,750.00 |
| Costs | Up to $50,000.00 | Up to $25,000 | Up to $14,000.00 |

*via two installments

LippSmith Dec. ¶ 28.

In addition to fairness, the Court should evaluate whether the settlement advances PAGA's primary objective "to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *See Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *4 (N.D. Cal. Apr. 2, 2010). PAGA penalties must, in part, "be distributed to the [LWDA] for enforcement of labor laws . . . and for education of employers and employees about their rights and responsibilities

1  under this code, to be continuously appropriated to supplement and not supplant the funding to the

2  agency for those purposes." *See* Lab. Code § 2699(j). As here, a PAGA settlement distributing 75%

3  of civil penalties to the LWDA and 25% of the civil penalties to the aggrieved employees fulfills

4  PAGA's express objectives. *Id.* at § 2699(i).

5       Fifth, the parties have undertaken sufficient discovery to inform their view of the

6  reasonableness of the Settlement. The parties engaged in formal discovery, including deposing

7  Defendant's Rule 30(b)(6) witness, propounding written discovery, engaging experts, and

8  exchanging documents. In addition, the parties conducted informal discovery, which included

9  production and analysis of thousands of pages of data.

10       Sixth, Counsel's experience and their respective views of the Settlement weigh in favor of

11  approving the Settlement. Proposed Class Counsel's qualifications and experience support a

12  determination that Counsel is qualified to represent the Class' interests. Plaintiffs' Counsel have

13  extensive experience in employment class actions, including significant wage-and-hour litigation.

14  Aiwazian Dec., ¶ 6; LippSmith Dec., ¶¶ 10–12. Based on that experience, Plaintiffs' Counsel

15  believe the Settlement is fair, reasonable, adequate, and is in the best interest of the Class Members.

16  Aiwazian Dec., ¶¶ 18, 27–28; LippSmith Dec., ¶¶ 27, 38. While counsel's recommendations are not

17  conclusive, the Court can properly consider them, particularly where, as here, Plaintiffs' Counsel

18  appear competent, have experience with this type of litigation, and have completed significant

19  discovery and investigation. Newberg Conte, *Newberg on Class Actions* § 11.47. While courts have

20  different views on the weight to accord Counsel's opinions of a settlement agreement, this factor

21  weighs in favor of approving the settlement. *Compare Carter v. Anderson Merch., LP,* 2010 WL

22  1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable

23  weight."), with *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)

24  ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class

25  actions and their counsel often have pecuniary interests in seeing the settlement approved.").

26       Seventh, the presence of a governmental participant, does not apply because this matter does

27  not include a governmental entity as a party. However, the proposed class representatives are acting

28  as Private Attorneys General in this case, and the Settlement includes PAGA Penalties to the

1   LWDA. The Settlement's allocation of funds to the LWDA and PAGA payments to the class are

2   fair and reasonable and comport with the Labor Code. Lab. Code § 2699(i).

3          The eighth and final factor, the reaction of class members to the proposed settlement, will be

4   determined following the issuance of class notice. "[T]he absence of a large number of objections to

5   a proposed class action settlement raises a strong presumption that the terms of a proposed class

6   settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

7   *Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig*., 309 F.R.D. 573,

8   589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is

9   typically a factor that supports settlement approval."). A "settlement is not unfair simply because a

10  large number or a certain percentage of class members oppose it, as long as it is otherwise fair,

11  adequate, and reasonable" because "[t]o hold otherwise would put too much power in the hands of a

12  few persons having no right to a preferred position in settlement, to thwart a result that might be in

13  the best interests of the class." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616 (N.D. Cal. 1979)

14  (finding that objections from only 16 percent of the class was persuasive that the settlement was

15  adequate). The Parties will know the percentage of objectors before the Final Approval Hearing and

16  will provide that information to the Court.

17          **D.     The Settlement Has No Obvious Deficiencies**

18          There are no obvious deficiencies in the settlement. *See*, *supra*, Section III (discussing

19  summary of settlement terms). There are no differences between the settlement class and the

20  proposed class in the operative Second Amended Complaint. There are no differences between the

21  claims to be released and the claims in the operative complaint, other than Plaintiffs agreeing to a

22  broader release of their own individual claims that does not apply to the other Class Members.

23  **VI.    CERTIFICATION OF THE CLASS IS APPROPRIATE**

24          The Parties have agreed to provisional certification of the Class for settlement purposes

25  only. Settlement, ¶¶ 4, 7. Class certification involves two steps. First, a plaintiff must establish that

26  each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and

27  adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Second, the

28  plaintiff must establish that at least one of the bases for certification set forth in Rule 23(b) is met.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

1   Here, Plaintiffs seek to certify a class pursuant to Rule 23(b)(3) and must show that "questions of

2   law or fact common to class members predominate over any questions affecting only individual

3   members, and that a class action is superior to other available methods for fairly and efficiently

4   adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

5       **A.**    **The Class Is Sufficiently Numerous and Ascertainable**

6       The putative class must be "so numerous that joinder of all members is impracticable." Fed.

7   R. Civ. P. 23(a)(1). While not enumerated in Rule 23, "courts have recognized that 'in order to

8   maintain a class action, the class sought to be represented must be adequately defined and clearly

9   ascertainable.'" *Vietnam Veterans of Am*. *v*. *C.I.A*., 288 F.R.D. 192, 211 (N.D. Cal. 2012)

10  (quoting *DeBremaecker v*. *Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *see also Berger v*. *Home*

11  *Depot USA*, *Inc*., 741 F.3d 1061, 1071, n.4 (9th Cir. 2014) (referring, in dicta, to the "threshold

12  ascertainability test"). "[A] class definition is sufficient if the description of the class is 'definite

13  enough so that it is administratively feasible for the court to ascertain whether an individual is a

14  member.'" *Vietnam Veterans*, 288 F.R.D. at 211 (quoting *O'Connor v*. *Boeing N*. *Am*., *Inc*., 184

15  F.R.D. 311, 319 (C.D. Cal. 1998)).

16      Courts have considered at least three aspects of "ascertainability" when considering whether

17  to certify a class: whether (1) the class can be ascertained by reference to objective criteria;

18  (2) the class includes members who are not entitled to recovery; and (3) the putative named

19  Plaintiffs can show they will be able to locate absent class members upon certification. *See Lilly*

20  *v. Jamba Juice Co.*, 2014 WL 4652283, at *3–4 (N.D. Cal. Sept. 18, 2014).

21      Here, the Class of approximately 684 people is so numerous that its joinder is impracticable.

22  *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 435 (2000); LippSmith Dec., ¶ 25. Thus, the Class is

23  sufficiently numerous. *See Rose v. City of Hayward*, 126 Cal. App. 3d 926, 934–35 (1981) (holding

24  a class of 30 to 40 satisfies numerosity). Moreover, Defendant will identify all Class Members using

25  employment records. Settlement, ¶ 23. Thus, the Class is ascertainable. *See Villanueva v. Morpho*

26  *Detection, Inc.*, No. 13-cv-05390-HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015).

27      **B.**    **The Class Members Share Common Questions of Law and Fact**

28      A court can certify a Rule 23 class only if "there are questions of law or fact common to

the class." Fed. R. Civ. P. 23(a)(2). For purposes of Rule 23(a)(2), even a single common question is sufficient. *Wal-Mart*, 131 S. Ct. at 2556. The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 2551. "What matters to class certification . . . is not the raising of common 'questions' - even in droves - but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (emphasis in original) (citation omitted).

Here, common issues of fact and law predominate. Defendant's policies and practices concerning overtime and meal break/rest periods implicate the class members' claims as a whole. Based on the documents and information obtained through formal and informal discovery and the exchange of information for mediation, Plaintiffs contend all Class Members were subject to the same or similar job duties and uniform operations and employment practices, policies, and procedures during the Class Period. Plaintiffs' claims arise from Defendant's uniform policy and systematic scheme, as to Plaintiffs and Class Members, of failing to pay regular, minimum, and overtime wages properly; failing to pay all compensation due for work performed; failing to provide compliant meal and rest periods and associated premium pay; and failing to reimburse Plaintiffs and Class Members for necessary business-related expenses. Aiwazian Dec., ¶ 15; LippSmith Dec., ¶ 24. Plaintiffs also contend Defendant's payroll and recordkeeping practices were substantially the same as to the Class during Class Period. Thus, Plaintiffs' claims Defendant uniformly failed to pay all Class Members all compensation due to them during the Class Period.

These claims involve the same allegations, facts, supporting evidence, and applicable law. Plaintiffs argue the outcome of this litigation hinges on Defendant's uniform operations and employment policies and procedures, which applied across its hourly-paid employees during the Class Period. The claims will rise and fall together; common issues predominate.

As discussed, *infra*, in Part XI, Plaintiffs' claims are typical of the Class because Defendant employed them during the Class Period, and they suffered wage-and-hour problems typical of the Class. LippSmith Dec., ¶ 24. Also as discussed, *infra*, in Part VII, Plaintiffs are adequate class representatives. Moreover, as discussed, *infra*, in Part VIII, Plaintiffs' Counsel will fairly,

1    adequately, and zealously continue to protect the interests of the Class. Finally, prosecution of

2    separate actions by individual Class Members would create the risk of inconsistent or varying

3    adjudications. Thus, a class action is superior means for the fair adjudication of the case.

4        Accordingly, the Court should certify the Class for settlement purposes only.

5    **VII.    THE COURT SHOULD PROVISIONALLY APPOINT CLASS**

6        **REPRESENTATIVES**

7        Plaintiffs respectfully request provisional appointment as Class Representatives. Plaintiffs'

8    claims and defenses are typical of the class, and they are adequate to represent the Class's interests

9    pursuant to Rule 23(a)(3). The claims of Plaintiffs and the putative class members are identical and

10   arise under the same provisions of the California Labor Code. *Wang v. Chinese Daily News, Inc.*,

11   231 F.R.D. 602, 608 (C.D. Cal. 2005) ("Since the named Plaintiffs raise the same Labor Code

12   violations as other putative class members, their claims are typical of the class."), *rev'd and vacated*

13   *on other grounds*, 737 F.3d 538 (9th Cir. 2013) (en banc).

14       A review of Plaintiffs' employment file shows that their claims are typical of the Class.

15   LippSmith Dec., ¶ 24. Plaintiffs allege that Defendant engaged in uniform, unlawful practices and

16   procedures, including failure to pay regular, minimum, and overtime wages properly; failure to pay

17   all compensation due for all of the work performed; failure to provide compliant meal periods, rest

18   periods, and associated premium pay; failure to pay timely wages during employment and upon

19   termination; failure to provide compliant wage statements; failure to maintain requisite payroll

20   records; and failure to reimburse necessary business expenses. *Id*. Plaintiffs' individual claims align

21   with those of the Class; their claims and defenses are, therefore, typical of the Class. Moreover,

22   Plaintiffs do not have any individual claims or defenses, so they have no conflict with the Class.

23       Plaintiffs have zealously pursued this action on the Class's behalf. They understand and

24   have taken seriously their roles as potential class representatives and as California Private Attorneys

25   General, stepping up to pursue claims on behalf of other Aggrieved Employees. Declaration of

26   Anne Kastler ("Kastler Dec."), ¶ 3, Declaration of Saul Andrade ("Andrade Dec."), ¶ 3, Declaration

27   of Anthonicia Stallings ("Stallings Dec."), ¶ 3. Plaintiffs have been available whenever their

28   attorneys need them and spent time and effort producing relevant documents and providing facts

1  and evidence necessary to help prove the allegations. Aiwaizian Dec. ¶ 12; LippSmith Dec., ¶ 32;

2  Kastler Dec., ¶ 5, Andrade Dec., ¶ 5, Stallings Dec., ¶ 5. Plaintiffs also have considered what is fair

3  for Class Members and Aggrieved Employees through the pendency of this matter. Kastler Dec.,

4  ¶ 7, Andrade Dec., ¶ 7, Stallings Dec., ¶ 7. If the Court appoints Plaintiffs as Class Representatives,

5  they will continue to use their independent judgment on what is fair and reasonable for all Class

6  Members and for the LWDA. Kastler Dec., ¶ 9, Andrade Dec., ¶ 9, Stallings Dec., ¶ 9. Plaintiffs

7  also have agreed to a broader release of their own individual claims that would not apply to the

8  other Class Members. Kastler Dec., ¶ 7, Andrade Dec., ¶ 7, Stallings Dec., ¶ 7. Due to the

9  timeframe during which each Plaintiffs became involved in this matter, Plaintiffs seek varying

10 Enhancement Awards. LippSmith Dec., ¶ 32. Specifically, Plaintiffs Andrade and Stallings learned

11 of and began participating in the lawsuit subsequent to Plaintiff Kastler's involvement and initiation

12 of this case. *Id.* This Court should provisionally appoint Plaintiffs as Class Representatives.

13 **VIII.  THE COURT SHOULD PROVISIONALLY APPOINT CLASS COUNSEL**

14      Plaintiffs' Counsel have litigated this matter for more than two years and were actively

15 preparing to file a motion for class certification when the case went to mediation for the second

16 time. Aiwazian Dec., ¶ 18. As discussed in Part V.C, *supra,* the work in this matter has been

17 extensive, demanding, and ultimately successful in achieving a substantial settlement, particularly

18 in light of Defendant's financial condition. Plaintiffs' Counsel are well-experienced in wage-and-

19 hour class action litigation and used that experience to obtain a significant Settlement that includes

20 both a common fund and PAGA Penalties. Aiwazian Dec., ¶ 6; LippSmith Dec., ¶¶ 10–12, 17.

21      The Settlement allows Plaintiffs' Counsel to apply for an attorney fee award in an amount of

22 $175,000, or 35% of the Gross Settlement Fund. Settlement, ¶ 15. The Settlement also allows

23 Plaintiffs' Counsel to apply for up to $40,000 in litigation costs and expenses. *Id.* at ¶ 14. The

24 Attorney Fees and Costs provided for in the Settlement are commensurate with: (1) the risk

25 Plaintiffs' Counsel took in bringing and litigating this case, (2) the extensive time, effort and

26 expense Plaintiffs' Counsel have dedicated and will dedicate to the case, (3) the skill and

27 determination Plaintiffs' Counsel have shown, (4) the results Plaintiffs' Counsel have achieved

28 throughout the litigation, (5) the value of the Settlement Plaintiffs' Counsel have achieved for the

Class Members and the LWDA, and (6) the other cases Plaintiffs' Counsel turned down in order to devote their time and efforts to this matter. Aiwazian Dec., ¶ 13. The proposed Notice provides Class Members with information about the amount allocated toward, and to be sought for, Attorney Fees and Costs, per the Settlement. Settlement, Ex. 1.

Plaintiffs' Counsel have borne all the risks and costs of litigation and will not receive any compensation until recovery is obtained. Aiwazian Dec., ¶ 14; LippSmith Dec., ¶ 35. Plaintiffs' Counsel estimates that its lodestar incurred to date is approximately $231,155. Aiwazian Dec., ¶ 13; LippSmith Dec., ¶ 35. This calculation is based on (1) the estimated incurred lodestar of $140,405 for LippSmith LLP timekeepers, with 261.3 hours through preliminary approval with hourly rates ranging from $150-800 for work performed by one paralegal and three attorneys (LippSmith Dec., ¶ 34) plus (2) the estimated incurred lodestar of $90,750 from Lawyers *for* Justice based upon 154 hours at a blended hourly rate of $550 (Aiwazian Dec., ¶ 13). Provided the remaining approval proceedings are uncomplicated, Plaintiffs' Counsel estimates they will expend approximately 200 more hours on future work through final approval and settlement administration, resulting in $107,000 in future additional lodestar. LippSmith Dec., ¶ 34.

These timekeeper rates are within reasonable range. Plaintiffs' Counsel's "billing rates" are "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation" *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, at *17 (N.D. Cal. Nov. 4, 2020). Moreover, considering Plaintiffs' Counsel incurred and reasonably estimated future lodestar total of $338, 622, the Settlement's maximum attorney fees of $175,000 represents 52% their lodestar, which can hardly be deemed unreasonable or unfair. *Id.* at *18.

Of course, Plaintiffs' Counsel will provide extensive evidence as to the time worked, litigation efforts, and further argument in Plaintiffs' Motion for Final Approval and application for Attorney Fees and Costs and at the Final Approval Hearing. Considering the work performed and the risks incurred, the Attorney Fees and Costs set forth in the Settlement are well within the range of reasonableness.

## IX.    THE COURT SHOULD APPOINT SIMPLURIS AS SETTLEMENT ADMINISTRATOR

The Parties agree to the appointment of Simpluris, Inc. as Settlement Administrator. Settlement, ¶ 21. Simpluris has extensive experience in class actions. Declaration of Kimberly Sutherland ("Sutherland Dec."), ¶ 2. Simpluris has provided notice, claims administration services, or both in more than 6,000 cases, of which 4,000 were labor and employment cases. *Id.* at ¶ 3. Simpluris has handled approximately $6 billion in settlements during the past 12 years. *Id.*

Simpluris will mail the Notice to each Class Member by First Class U.S. mail. Settlement, ¶ 23. The Claims Administrator will calculate the Individual Settlement Shares and PAGA Settlement Shares; deduct and transmit applicable state, and/or federal taxes thereon; mail the payment checks to Claimants and PAGA Recipients; issue W-2 and 1099 forms; calculate and disburse the Attorney Fees and Costs and Enhancement Award; and perform such other tasks necessary to effectuate the Notice Plan and terms of the Settlement. *Id.* at ¶¶ 13, 18–19, 23, 25–28. The Claims Administration Costs are estimated to be $11,000. Sutherland Dec., ¶ 6 & Ex. A. Administration Costs will be paid out of the Gross Settlement Fund. Settlement, ¶ 11.

Plaintiffs' Counsel have worked with Simpluris in similar litigation. LippSmith Dec. ¶ 31. Simpluris did excellent work at a fair price on litigation involving the same Plaintiffs' Counsel: *Andrade v. Nature's Best* (Case No. CIVDS 1508659, Superior Court of the State of California, County of San Bernardino). *Id.* Based on Simpluris' reliable work product and pricing in the *Andrade* matter, Plaintiffs' Counsel proposed that Simpluris also administer the settlement in this case, as well as *Williams v. Voxpro* (Case No. 34-2019-00270324-CU-OE-GDS, Superior Court of the State of California, County of Sacramento), a PAGA-only case for which the final settlement approval hearing is on May 12, 2021), and *Sanchez v. Galleher* (Case No. CGC19579749, Superior Court of the State of California, County of San Francisco), where preliminary approval proceedings are pending. *Id.* Plaintiffs' Counsel believe Simpluris will dutifully perform its role set forth in the Settlement in the best interests of Plaintiffs, the Class, the Aggrieved Employees, and the State. *Id.*

Accordingly, Plaintiffs respectfully request that the Court appoint Simpluris as the Claims Administrator and direct Simpluris to effectuate the Notice Plan, including mailing the Notice.

X.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting the standard for class notice is "best practicable" notice, not "actually received" notice).

The proposed Notice describes the terms and conditions of the Settlement; the monetary relief the Settlement will provide to Claimants and PAGA Recipients; the deadlines and procedures to submit a Request for Exclusion, Objection, or Dispute; and the date and time set for the Final Approval Hearing. Settlement, Ex. 1. The proposed Notice also lists the number of Workweeks credited to each Class Member, states the estimated gross amount of the Class Member's Individual Settlement Share and, if applicable, an estimate of each PAGA Recipient's PAGA Payment. *Id.*

The proposed Notice also satisfies all due process requirements and complies with the standards of fairness, completeness, and neutrality. *Newberg*, §§ 8.21, 8.39. Accordingly, the Court should approve the proposed Notice.

XI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN DEADLINES

Plaintiffs seek approval of the proposed Notice Plan and accompanying deadlines. *Newberg*, at § 11.26; Sutherland Dec., ¶¶ 5–15. Within 14 days of the order granting preliminary approval, Defendant must provide Simpluris with information necessary to compile the Class List and Information. Settlement, ¶ 23; Sutherland Dec., ¶ 7. Within 10 days of receiving the Class List and Information, Simpluris must mail the notice to the Class, after searching for updated address information. Settlement, ¶ 23; Sutherland Dec., ¶ 7. Class Members have 35 days from the Notice mailing to opt out by mailing a signed Request for Exclusion. Settlement, ¶ 24; Sutherland Dec., ¶ 11. Class Members who object to the Settlement must do so within the same timeframe.

1  Settlement, ¶¶ 24, 26; Sutherland Dec., ¶ 11. The Settlement also provides a process for Class

2  Members to submit a Dispute related to the number of Workweeks during the Class or PAGA

3  Period, as indicated in their Notice. Settlement, ¶ 27; Sutherland Dec., ¶ 12. The Settlement also

4  describes the process for addressing undelivered Notices, including remailing those Notices to a

5  forwarding address within five days or skip-tracing or using other methods to locate a forwarding

6  address. Settlement, ¶ 28; Sutherland Dec., ¶ 10. The Settlement also adjusts the deadline to object

7  or opt out of the Settlement in the event of a returned or undeliverable Notice. Settlement, ¶ 28.

8        Plaintiffs request that this Court set the due date for the Motion for final approval for two

9  weeks before Final Approval Hearing. Plaintiffs also request that this Court set the Final Approval

10  Hearing for as soon as is practicable following the Response Deadline.

11        The Court should approve the fair and reasonable proposed Notice Plan deadlines.

12  **XII.   CONCLUSION**

13        For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary

14  approval of the Settlement.

15  Dated: May 3, 2021                            **LIPPSMITH LLP**

16

17                               By:     <u>/s/ *Graham B. LippSmith*</u>

18                                        Graham B. LippSmith
                                      Celene Chan Andrews

19                                  **LAWYERS for JUSTICE, PC**

20                                  Edwin Aiwazian

21                                  Arby Aiwazian

22                                  Jenay Younger
                                Kenyon Harbison

23                                  Attorneys for Plaintiffs

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on May 3, 2021, I electronically filed a **PLAINTIFFS' NOTICE OF**

3  **MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND**

4  **PAGA SETTLEMENT** with the Clerk of the Court, using the CM/ECF system, which will send

5  notification of such filing to the counsel of record in this matter who are registered on the CM/ECF

6  system to receive service.

7                                                   */s/ Graham B. LippSmith*

8                                                   Graham B. LippSmith

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG