UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE KASTLER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>OH MY GREEN, INC.,<br><br>    Defendant. | Case No. 19-cv-02411-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 87 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs Anne Kastler, Saul Andrade, and Anthonicia Stallings. Dkt. No. 87 ("Mot."). The parties have reached a settlement regarding Plaintiffs' claims and now seek preliminary court approval. On July 22, 2021, the Court held a hearing on the parties' motions for preliminary approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

**I.  BACKGROUND**

    **A.  Factual and Procedural Background**

On February 28, 2019, Plaintiff Anne Kastler filed a wage and hour putative class action complaint against Defendant Oh My Green, now known as Garten, Inc., in the San Mateo County Superior Court. Dkt. No. 1-1. Plaintiff Kastler was employed by Defendant as an hourly, non-exempt employee in California from approximately November 2016 to February 2017. *Id.* ¶ 18. Defendant removed the case to federal court on May 2, 2019. Dkt. No. 1. On May 9, 2019, Defendant filed a motion to dismiss, Dkt. No. 5, which the Court dismissed as moot after Plaintiff Kastler filed a First Amended Complaint ("FAC") on May 23, 2019. Dkt. No. 18. The FAC asserted eight causes of action for violations of (1) California Labor Code sections 510 and 1198

(unpaid overtime); (2) California Labor Code sections 226.7 and 512(a) (unpaid meal period premiums); (3) California Labor Code section 226.7 (unpaid rest period premiums); (4) California Labor Code sections 1194, 1197, and 1197.1 (unpaid minimum wages); (5) California Labor Code sections 201 and 202 (final wages not timely paid); (6) California Labor Code section 226(a) (non-compliant wage statements); (7) California Labor Code sections 2800 and 2802 (unreimbursed business expenses); and (8) California Business and Professional Code section 17200 (Unfair Competition Law, "UCL"). Dkt. No. 15. at 1.

Plaintiff Kastler filed a motion to remand, Dkt. No. 12, and Defendant filed a motion to dismiss the FAC, Dkt. No. 21. On October 25, 2019, the Court denied both motions. Dkt. No. 39. On April 1, 2020, the parties participated in a mediation before Judge Michael Latin (Ret.), but did not reach a resolution. Dkt. No. 87-3, Declaration of Edwin Aiwazian ("Aiwazian Decl.") ¶ 7. The Court granted several stipulations to continue the deadline to file a motion for class certification. Dkt. Nos. 45, 48, 52. On November 18, 2020, the Court granted Defendant's counsel's motion to withdraw. Dkt. No. 63. On March 15, 2021, the parties participated in another mediation session before Judge Howard R. Broadman (Ret.), of which the parties reached a tentative settlement. Dkt. No. 79.

On April 29, 2021, the Court granted the parties' stipulation to file a second amended complaint ("SAC") to add Saul Andrade and Anthonicia Stallings as additional named plaintiffs and add a ninth claim under the Private Attorneys General Act ("PAGA"). Dkt. No. 84. Defendant employed Plaintiff Andrade and Plaintiff Stallings as hourly, non-exempt employees in California from approximately June 2017 to February 2018 and December 2018 to January 2019, respectively. SAC ¶¶ 27–28. The SAC alleges that Defendant engaged in uniform practices and procedures that violate the Labor Code: failure to pay regular, minimum, and overtime wages properly, including their rounding policy; failure to pay all compensation due for all work performed; failure to accurately calculate the regular rate for meal, rest, and overtime premiums; failure to provide compliant meal periods, rest periods, and associated premium pay; failure to pay timely wages during employment and upon termination or resignation; failure to provide compliant wage statements; failure to maintain requisite payroll records; and failure to reimburse

2

necessary business expenses. *See generally* SAC. On May 3, 2021, Plaintiffs moved for preliminary approval. Dkt. No. 87.

Following the hearing on the motion for preliminary approval, the parties filed a supplemental brief in support of their motion and addendum to the settlement agreement to clarify certain elements of the settlement and address the Court's questions about the notice to be sent to class members and the time for class members to submit a request for exclusion, objection, or dispute. *See* Dkt. No. 90. The parties also provided a revised notice to reflect the clarifications and changes made. Dkt. No. 90-4. The revised notice adds information concerning the process for submitting a request for exclusion following resolution of any dispute, adds contact information for the State Controller's Office, and adds a requirement to include the class member's name, case name, and case number for any dispute in accordance with the settlement agreement. *See id.*

### B. Settlement Agreement

Following informal and formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement on April 30, 2021. Dkt. No. 87-2 ("SA"). The key terms are as follows:

<u>Class Definition</u>: The Settlement Class is defined as:

> All current and former non-exempt hourly employees who worked for Defendant within California at any time during the period between February 28, 2015 and preliminary approval.

SA ¶ 7.

<u>Settlement Benefits</u>: Defendant will make a $500,000 non-reversionary payment into a "Gross Settlement Fund." *Id.* ¶ 11. The Gross Settlement Fund includes payments to Class Members, settlement administrative expenses, alleged PAGA penalties in the amount of $50,000, incentive awards, attorney fees, and litigation costs. *Id.* ¶¶ 11, 17–18. In addition to the Gross Settlement Fund, Defendant will pay its "share of the employer-side payroll taxes on the amount of the Settlement allocated to wages." *Id.* ¶ 11.

Payments to class members will be made from the "Net Settlement Fund," the balance of the Gross Settlement Fund after payments have been made for administrative expenses, alleged

3

PAGA penalties, and any court-approved attorney fees, litigation costs, and incentive awards. *Id.* ¶¶ 12–13. Defendant will provide the settlement administrator the number of "[w]orkweeks," defined as "the total number of weeks worked by all" class members during the class period, and the number of workweeks each class member worked. *Id.* ¶ 13. Each class member will be paid their share of the Net Settlement Fund by calculating their pro rata shares of the workweeks. *Id.* The Settlement is "predicated upon the estimated eighteen thousand, four hundred and one (18,401) workweeks" for the class period. *Id.* ¶ 34. "If the number of workweeks is five percent (5%) higher than eighteen thousand, four hundred one (18,401) as of preliminary approval, the Parties agree to increase the Gross Settlement Fund one percent (1%) as appropriate by Twenty-Seven Dollars and Seventeen Cents ($27.17) for each workweek that exceeds the five percent (5%) threshold." *Id.*

As to the PAGA payment, the parties propose that 75% ($37,500) of the total sum of $50,000 will be paid to the California Labor and Workforce Development Agency ("LWDA"). *Id.* ¶ 18; *see* Cal. Lab. Code § 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved employees). The remaining 25% ($12,500) will be allocated on a pro rata basis to class members "employed by Defendant as non-exempt employees in California during the period from February 28, 2018 to preliminary approval ('PAGA Period')." *Id.* Defendant will calculate the number of "PAGA [w]orkweeks," defined as "the total number of weeks worked by all" class members during the PAGA period. *Id.* Any class members employed during the PAGA period will be paid their pro rata share of the PAGA payment regardless of whether they opt out of the class action settlement, but those who opt out of the class action settlement will only be bound by the release as to claims arising under PAGA. *Id.* Class members must submit any disputes concerning the number of workweeks or PAGA workweeks within 45 days of the initial mailing of class notice by the settlement administrator. Dkt. No. 90-2 at 2.

Remaining Funds:  Settlement checks that are not cashed within 120 days of mailing will be "tendered to the State Controller's Office, Unclaimed Property Division in the name of the Settlement Class Member and the amount of the check that was cancelled." SA ¶ 29.

Release:  All Settlement Class Members will release the "Released Parties" from:

4

> any and all claims, demands, rights, liabilities, actions, grievances, demands for arbitration, and causes of action, of every nature and description, that were or could have been asserted based on the facts alleged in the SAC, including but not limited to, any state or federal claims relating to the failure to pay wages and overtime, failure to provide meal or rest breaks, failure to pay minimum wage, failure to provide accurate and complete wage statements, failure to keep requisite payroll records, failure to timely pay employees during employment or at termination, failure to reimburse employees for business expenses, unfair competition, PAGA penalties, waiting time penalties, interest, attorney fees, or any other alleged known or unknown wage and hour violations that were alleged or could reasonably have been alleged based on arising out of the acts, facts, transactions, occurrences, representations, or omissions that were asserted in the Lawsuit ("Released Claims"). Any Class Member who receives a payment under PAGA pursuant to Paragraph 18 and who opts out of the Settlement is only bound by the release of PAGA claims.

*Id.* ¶ 30. The "Released Parties" include "Defendant, and all of their past, present, and future officers, directors, agents, employees, attorneys, insurers, re-insurers, parent companies, and subsidiaries." *Id.*

<u>Additional Release by Named Plaintiffs</u>: The three named Plaintiffs make an "additional general release of all claims, known or unknown, in exchange and consideration of the Enhancement Awards . . . which are subject to and contingent upon the Court's review and approval." *Id.* ¶ 31; Dkt. No. 90-2 at 3. Specifically,

> Plaintiffs agree to a general release of the Released Parties from all claims, demands, rights, liabilities, actions, grievances, demands for arbitration, and causes of action of every nature and description whatsoever, known or unknown, pending or threatened, asserted or that might have been asserted, whether brought in tort or in contract, whether under state, federal or local law during the Class Period. Except as otherwise specifically provided under this Settlement Agreement, Plaintiffs expressly waive and relinquish all rights and benefits afforded by § 1542 of the Civil Code of the State of California, which states: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.
> . . .
> Plaintiffs do not release any claim which cannot be released by private agreement, such as unemployment compensation claims, workers' compensation claims, claims of entitlement to vested benefits under any 401(k) plan or other ERISA-covered benefit plan provided by Defendant, or claims after the Effective Date of this Agreement.

SA ¶¶ 31–32.

5

Class Notice: Simpluris Inc. ("Simpluris"), a third-party settlement administrator, will mail notice of the class action settlement by first-class U.S. mail in English and Spanish to the last known address of each class member. *Id.* ¶¶ 21, 23. The notice will include: a summary of the claims, a summary of the settlement terms, an estimate of the settlement share and any PAGA payment based on the number of workweeks they worked during the class period and PAGA period, the released claims, and instructions on how to object to and opt out of the settlement, including relevant deadlines. Dkt. No. 90-4.

Opt-Out Procedure: The deadline for a class member to submit a request for exclusion is 45 days of the mailing of class notice by the settlement administrator. Dkt. No. 90-2 at 2. The parties originally provided only 35 days to opt out, but increased the response deadline to 45 days. Class members who receive a re-mailed notice will have 14 days from the postmark date of the re-mailed notice to submit a request for exclusion. SA ¶ 28. Class members who submit a dispute will have 14 days to submit a request for exclusion. Dkt. No. 90-2 at 3.

Settlement Administrative Costs: The "reasonable costs of settlement administration through and beyond final approval, are estimated to be no greater than" $11,000. SA ¶ 17. If the fees and costs are less than $11,000, the difference will be included in the Net Settlement Fund. *Id.* If the fees and costs are greater than $11,000, "no additional fees and costs will be paid from the Gross Settlement Fund." Dkt. No. 90-2 at 1.[1]

Incentive Award: Plaintiff Kastler will apply for an incentive award up to $7,500, and Plaintiff Andrade and Plaintiff Stallings will each apply for awards of up to $5,000. SA ¶ 16. Defendant will not oppose these requests. *Id.* If the Court approves less than the amount requested, the difference between the requested and awarded amounts will be included in the Net Settlement Fund.

Attorneys' Fees and Costs: Class Counsel will file an application for attorneys' fees in an amount up to $175,000,000, as well as costs up to $40,000. *Id.* ¶¶ 14–15. Defendant will not

---

[1] The settlement agreement included a provision stating that additional fees and costs would be paid from the Gross Settlement Fund, but this was inconsistent with the parties' other representations. The parties clarified at the hearing that the maximum costs of settlement administration are $11,000 and included this clarification in their addendum. *See* Dkt. No. 90-2.

6

1    oppose these requests. *Id.* Any difference between the requested and awarded amounts will be
2    included in the Net Settlement Fund. *Id.*

## II.  PROVISIONAL CLASS CERTIFICATION

### A.  Legal Standard

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, a plaintiff must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she or he must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id.* However, this concern is not present in certifying a settlement class. *Id.* at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id.* at 557 (citation omitted).

### B.  Analysis

To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) and Rule 23(b)(3) have been met. As discussed in more detail below, the Court finds that they have.

#### i.  Rule 23(a) Certification

##### a.  Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." The Court finds that numerosity is satisfied here because joinder of the

7

estimated 684 class members would be impracticable. Dkt. No. 87-1, Declaration of Graham B. Lippsmith ("Lippsmith Decl.") ¶ 25.

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' ― even in droves — but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include whether Defendant had a policy and practice of failing to pay employees for all hours worked and missed meal periods and rest breaks, whether Defendant provided complete and accurate wage statements, and whether Defendant failed to reimburse employees for necessary business-related expenses. *See*, *e.g.*, SAC ¶¶ 15, 35, 73, 85, 114. Accordingly, the Court finds that the commonality requirement is met.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

Plaintiffs' claims are both factually and legally similar to those of the putative class because Defendant allegedly failed to provide Plaintiffs and all class members meal breaks and

rest periods, overtime wages, and complete and accurate wage statements, and allegedly failed to reimburse Plaintiffs and all class members for necessary business expenses. SAC ¶¶ 29, 35, 38, 44–45, 48–49, 52–54. Plaintiffs have not alleged any individual claims. This is sufficient to satisfy the typicality requirement.

### d. Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or proposed class counsel have a conflict with other class members. Plaintiffs' counsel has been appointed class counsel in numerous federal and state class actions and represented plaintiffs in wage-and-hour class and PAGA representative actions. Lippsmith Decl. ¶ 10; Aiwazian Decl. ¶ 6. The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date, and will continue to do so. The adequacy of representation requirement, therefore, is satisfied.

### ii. Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### a. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and quotations omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (citation and quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and quotations omitted).

Here, the Court concludes that for purposes of settlement, common questions raised by Plaintiffs' claims predominate over questions affecting only individual members of the proposed class. Plaintiffs allege that Defendant, as part of its "pattern and practice of wage abuse against their hourly-paid or non-exempt employees," failed to compensate its hourly non-exempt employees for all hours worked, failed to provide meal and rest breaks and complete and accurate wage statements, and failed to reimburse them for reasonable expenses. SAC ¶¶ 29, 35, 48–54; Lippsmith Decl. ¶ 24; Aiwazian Decl. ¶ 15. Because under Plaintiffs' allegations Defendant's wage and hour policies were uniform and violated California law, the Court finds the predominance requirement is met for purposes of provisional class certification.

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are

met.

### iii. Class Representatives and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the Named Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in class action suits, especially wage-and-hour class actions. Lippsmith Decl. ¶ 10, 12; Aiwazian Decl. ¶ 6. Accordingly, the Court appoints the law firms of LippSmith LLP and Lawyers for Justice, PC as Class Counsel.

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted).

11

Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (citations and quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## B. Analysis

### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See id.* The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

As discussed above, the proposed settlement is non-reversionary with all unclaimed funds "tendered to the State Controller's Office, Unclaimed Property Division in the name of the Settlement Class Member and the amount of the check that was cancelled." SA ¶ 29; *see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL 5074392, at *10 (N.D. Cal. Aug. 27, 2020) (granting final approval of settlement requiring "[p]ayments for the settlement

1  class members for whom the settlement administrator lacks mailing addresses and/or whose notice
2  settlement administrator deemed undeliverable shall be submitted . . . to the California State
3  Controller's Office"). However, the Settlement Agreement contains a clear sailing arrangement,
4  which states that "Defendant will not oppose[] payment of attorney fees from the Gross Settlement
5  Fund in an amount up to One Hundred Seventy-Five Thousand Dollars ($175,000.00) i.e., thirty
6  five percent (35%) of the Gross Settlement Fund" and that "Defendant will not oppose[] payment
7  of Class Counsel's litigation costs from the Gross Settlement Fund, in an amount up to Forty
8  Thousand Dollars ($40,000.00)." *Id.* ¶¶ 14–16.

### a. Clear Sailing Provision

Clear sailing provisions are not prohibited, though they "'by [their] nature deprive[ ] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *Roes*, 944 F.3d at 1050 (quoting *In re Bluetooth*, 654 F.3d at 949) (alterations in original). The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Id.* at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (citation and quotations omitted).

Here, counsel will request fees up to $175,000 and costs up to $40,000. SA ¶¶ 14–16. When deciding to award attorney's fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees award. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Class Counsel asserts that they have spent 415.3 hours litigating this action and their lodestar incurred to date is $231,155. Lippsmith Decl. ¶ 34. Counsel estimates

13

that they will spend 200 more hours through final approval and settlement administration, resulting in $107,000 in future additional lodestar for an estimated future total of $338,155. *Id.*[2] Counsel thus asserts the requested maximum sum of $175,000 represents 52% of their lodestar. *See id.*; *see also* Mot. at 21. Based on Counsel's representations, the Court also notes the requested fee is below the current lodestar amount incurred to date.

The Court recognizes that Class Counsel obtained results for the prospective class members, as discussed below in Section III(B)(iii)(c). And Class Counsel did assume substantial risk in litigating this action on a contingency fee basis, and incurring costs without the guarantee of payment for its litigation efforts. Further, the agreement does not contemplate a disproportionate cash allocation between counsel and the class, as was the case in *Roes*. *See Roes*, 944 F.3d at 1051 ("Here, more of the available $2 million in settlement cash ultimately went to attorneys' fees ($950,000) than would be distributed to class members ($864,115)."). Even if the Court were to award 35% in attorneys' fees, the majority of the settlement cash will still be distributed to class members. The Court is cognizant of its obligations to evaluate class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fee awards is appropriate in this case. Accordingly, given that counsel will not receive a disproportionate amount of the settlement agreement and that the settlement is non-reversionary, the Court does not find that the clear sailing provision weighs against preliminary approval.

### b. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the

---

[2] Plaintiffs' motion indicated an estimated future lodestar total of $338,622. Mot. at 21. But the inputs provided calculate an estimated total of $338,155. This discrepancy does not make a difference for purposes of counsel's assertion that the estimated sum represents 52% of the total anticipated lodestar.

14

proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (citation and quotations omitted).

As previously noted, the Settlement Agreement authorizes payment from the Gross Settlement Fund of up to $7,500 to Plaintiff Kastler, $5,000 to Plaintiff Andrade, and $5,000 to Plaintiff Stallings for their service as Class Representatives. *Id.* ¶ 16. Although the Settlement Agreement authorizes Plaintiffs to seek incentive awards up to $7,500, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate Plaintiffs' award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### c. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, Plaintiffs assert that "Defendant's dire financial circumstances became the driving issue during litigation and both mediations." Mot. at 12. Class Counsel deposed Defendant's Rule 30(b)(6) witness, who testified that "Defendant had implemented massive layoffs to salvage funds, shuttered the majority of its operations, and experienced severe depletions in revenue."

Lippsmith Decl. ¶ 26. Class Counsel asserts that investigation leading into mediation and information obtained during mediation confirmed that the expected recovery could be "$0 because Defendant anticipates going under if it cannot resolve these claims." *Id.* However, Plaintiffs calculated potential recoveries using available employment data, including "information on numbers of employees, hours, pay periods, compensation rates, overtime compensation, meal and rest periods, and other relevant information." *Id.* ¶ 27. Specifically, Class Counsel and Plaintiffs' expert analyzed the employment data to "model potential recoveries for liabilities such as unpaid overtime, failure to provide meal and rest breaks, . . . PAGA, and other Labor Code Penalties." *Id.* ¶ 27. For example, assuming a high rate of violations, (i.e., every class member was unpaid for one hour of the estimated 18,401 workweeks in the class period at the average overtime rate of $30.27), "unpaid overtime damages would be $556,998.27." *Id.* ¶ 25. Similarly, "[a]ssuming one violation of meal and rest break damages for every employee for 18,401 workweeks, meal and rest break damages would be $371,332 based on the average hourly rate of $20.18." *Id.* And Labor Code penalties "started in the $700,000s." *Id.* Plaintiffs note that these valuations represent "high ranges of recoveries" and "assum[e] regular violations impacting every employee every week, which will be challenging to prove." Mot. at 13.

Based on the high potential recovery estimates provided, the Gross Settlement amount of $500,000 represents a fraction of Defendant's potential statutory damage exposure. But Plaintiffs acknowledge the substantial risks of further litigation given the complex issues that could defeat class certification and the need to "receive a favorable verdict capable of withstanding a potential appeal . . . before Defendant becomes insolvent." Mot. at 13. The Court finds that this risk weighs in favor of granting preliminary approval. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *8 (N.D. Cal. Apr. 1, 2011) ("[D]istrict courts have found that settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with litigation.").

### d. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore

finds that this factor weighs in favor of preliminary approval.

\*     \*     \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV.     PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (citation omitted).  The parties have agreed that Simpluris, a third-party settlement administrator, will mail notice of the class action settlement by first-class U.S. mail to the last known address of each class member, as provided by Defendant and updated by the administrator as appropriate.[3] SA ¶ 23.  Simpluris will mail the notice within 10 days of receiving the class list and relevant

---

[3] The Court grants Plaintiffs' request to appoint Simpluris as the settlement administrator. *See* Mot. at 22.

1 information. *Id.* The deadline to dispute the number of workweeks, opt out, or object is 45 days
2 from the date of the initial mailing of the class notice. Dkt. No. 90-2 at 2. Any notice returned as
3 undeliverable will be sent to any updated address provided with the returned mail. SA ¶ 28. If no
4 forwarding address is provided, the administrator will try to determine a correct address "by use of
5 skip-tracing or other search, using the name, address, and/or Social Security number of the Class
6 member involved." *Id.*[4] For class members who receive a re-mailed notice, the deadline to opt
7 out, object, or submit a dispute is 14 days from the postmark date of the re-mailed notice. *Id.* ¶ 24.
8 Class members who submit a dispute will have 14 days from when notice of the dispute of
9 resolution is transmitted to opt out. Dkt. No. 90-2 at 3.

10       The parties attached a copy of their proposed class notices to the settlement agreement.
11 Dkt. No. 87-2, Ex. 1. As noted, the parties provided a revised notice to reflect clarifications and
12 changes made. Dkt. No. 90-4. The notice describes the information required by Federal Rule of
13 Civil Procedure 23, in addition to information about submitting any disputes about the estimated
14 workweeks, as well as requests for attorneys' fees, litigation costs, incentive awards, and
15 administration costs. *Id.* at 2. The Court finds that the content of the proposed notice provides
16 sufficient information about the case and thus conforms with due process requirements. *See*
17 *Hyundai*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the
18 settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come
19 forward and be heard." (citation and quotations omitted)).

20 //
21 //
22 //
23 //
24 //
25 //

---

[4] The parties and settlement administrator will "enter into a confidentiality agreement with respect to the Class List and Information and use a secure method of transmitting such data." Dkt. No. 90-2 at 1.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motions for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: August 13, 2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge