Edwin Aiwazian (SBN 232943)
edwin@ calljustice.com
Arby Aiwazian (SBN 269827)
arby@ calljustice.com
Jenay Younger (SBN 327627)
jenay@calljustice.com
Kenyon Harbison (SBN 260416)
kenyon@calljustice.com
**LAWYERS for JUSTICE, PC**
410 Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

Graham B. LippSmith (SBN 221984)
g@lippsmith.com
Celene Chan Andrews (SBN 260267)
cca@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 344-1820 / Fax: (213) 513-2495

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE KASTLER, SAUL ANDRADE and ANTHONICIA STALLINGS, individually, and on behalf of other members of the general public similarly situated;<br><br>     Plaintiffs,<br><br>v.<br><br>GARTEN, INC., formerly known as OH MY GREEN, INC., an unknown business entity,<br><br>     Defendant. | Case No.: 4:19-CV-02411-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF COUNSEL (EDWIN AIWAZIAN AND GRAHAM B. LIPPSMITH); DECLARATION OF SETTLEMENT ADMINISTRATOR (LINDSAY KLINE); AND [PROPOSED] ORDER**<br><br>Date:  January 27, 2022<br>Time:  2:00 p.m.<br>Dept.:  2-Fourth Floor<br><br>Complaint Filed: February 28, 2019 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 27, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2, 4th Floor (Oakland) of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Anne Kastler, Saul Andrade, and Anthonicia Stallings ("Plaintiffs" or "Class Representatives") hereby move for an order granting final approval of:

1.    The April 30, 2021 Stipulation of Class Action and PAGA Settlement and Release of Claims and July 29, 2021 Addendum to Settlement Agreement (collectively, "Settlement[1]") between Plaintiffs and Defendant Garten, Inc. formerly Oh My Green, Inc. ("Defendant") on the grounds that the Settlement is fair, adequate, and reasonable because:

- A Net Settlement Fund of **$215,081.26** is available to Class Members who did not opt out of the Settlement ("Claimants");

- **No Class Member submitted an Objection to the Settlement** to the Claims Administrator; and

- **No Class Member submitted a Request for Exclusion from the Settlement** to the Claims Administrator.

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), which governs court approval of class action settlements; Federal Rule of Civil Procedure 23(g), which governs court appointment of class counsel; and Labor Code section 2699, which sets forth PAGA provisions.

All Parties have signed the Settlement. Defendant does not oppose and joins in this Motion.

Plaintiffs have submitted the Settlement to the California Labor and Workforce Development Agency ("LWDA") concurrently with this Motion pursuant to Labor Code section 2699(l)(2). Plaintiffs have also satisfied the prerequisites set forth in Labor Code section 2699.3(a), by providing the LWDA

---

[1] To the extent they are not specifically defined herein, all capitalized terms have the same meaning as in the April 30, 2021 Settlement, attached as Exhibit 1, to the May 3, 2021 Declaration of Graham B. LippSmith in Support of Motion for Preliminary Approval, ("5/3/21 LippSmith Dec.") (Dkt. No. 87-1) and the July 29, 2021 Addendum to Settlement Agreement (collectively, "Settlement"), attached as Exhibit A, to the July 29, 2021 Declaration of Graham B. LippSmith in Support of Joint Supplemental Briefing in Support of Motion for Preliminary Approval of Settlement ("7/29/21 LippSmith Dec.") (Dkt. No. 90-1).

and Defendant with written notice of the specific provisions of the Labor Code Plaintiffs allege

Defendant violated, including the facts and theories to support those alleged violations, via U.S. Certified

Mail on April 28, 2021. Plaintiffs will update the Court if the LWDA responds to Plaintiffs' notice.

Based on (1) the following memorandum of points and authorities, (2) the Declaration of Edwin

Aiwazian; (3) the Declaration of Graham B. LippSmith; (4) the Declaration of Lindsay Kline; and

(5) the [Proposed] Order Granting Final Approval of Class Action and PAGA Settlement filed

concurrently herewith, the pleadings and other records on file with the Court in this matter, and the

evidence and oral argument that may be presented at the hearing on this motion, Plaintiffs respectfully

request that the Court grant final approval of the Settlement.


Dated: December 16, 2021                          **LIPPSMITH LLP**


                                        By:    /s/ *Graham B. LippSmith*
                                               Graham B. LippSmith
                                               Celene Chan Andrews

                                               **LAWYERS for JUSTICE, PC**

                                               Edwin Aiwazian
                                               Arby Aiwazian
                                               Jenay Younger
                                               Kenyon Harbison

                                               Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO.: 4:19-CV-02411-HSG

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 2

III.   SUMMARY OF SETTLEMENT TERMS .......................................................... 3

IV.    LEGAL STANDARD ........................................................................................ 5

V.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ... 5

       A.     Multiple Factors Support Granting Final Approval ................................ 5

              1.     The Strength of Plaintiffs' Case ................................................... 5

              2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation ... 6

              3.     The Risk of Maintaining Class Action Status Throughout The Trial ... 8

              4.     The Amount Offered In Settlement .............................................. 9

              5.     The Extent of Discovery Completed and the Stage of the Proceedings ... 11

              6.     The Experience and Views of Counsel ......................................... 13

              7.     The Presence of a Governmental Participant ................................. 13

              8.     The Reaction of the Class Members to the Proposed Settlement ... 13

VI.    THE CLASS RECEIVED THE BEST NOTICE PRACTICABLE ...................... 14

VII.   UPDATED ATTORNEY FEE AND COSTS INFORMATION ........................... 17

VIII.  CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalgamated Transit Union v. Superior Court,* 46 Cal. 4th 993 (2009) .................................... 7

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) ............................................. 6

*Carter v. Anderson Merch., LP*, 2010 WL 1946784 (C.D. Cal. May 11, 2010) .................................. 13

*Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848 (N.D. Cal. 2010)........................................ 13

*Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal. 2008) ........................................ 6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ............................................. 5

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .................................... 14

*Kullar v. Foot Locker Retail,* 168 Cal. App. 4th 116 (2008) .................................................. 8

*Litty v. Merrill Lynch & Co.,* No. cv 14-0425 PA (PJWx),
    2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ............................................................. 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).......................... 14

*Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP,
    2010 WL 1340777 (N.D. Cal. Apr. 2, 2010) ............................................................. 11

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*,
    688 F.2d 615, 625 (9th Cir. 1982) ................................................................. 5, 14

*Rodriguez v. West Pub'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .............................................. 5

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)................................................................. 14

*Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-cv-1187 KJM CKD,
    2014 WL 6633396 (E.D. Cal. Nov. 21, 2014) ........................................................... 7

**Statutes**

Lab. Code § 203 ............................................................................................ 10

Lab. Code § 226 ............................................................................................ 10

Lab. Code § 226.7 ........................................................................................................... 10

Lab. Code § 1197.1 ......................................................................................................... 10

Lab. Code § 1198 ............................................................................................................ 10

Lab. Code § 2699(e)(2) ..................................................................................................... 8

Lab. Code § 2699(f)(2) ...................................................................................................... 6

Lab. Code § 2699(i) .................................................................................................... 11, 13

Lab. Code § 2699(j) ........................................................................................................ 11

Lab. Code § 510 .............................................................................................................. 10

Lab. Code § 512(a) ......................................................................................................... 10

**Other Authorities**

Conte & Newberg, Newberg on Class Actions § 8.21 (4th Ed.) ......................................... 16

Newberg Conte, *Newberg on Class Actions* § 11.47 ...................................................... 13

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................. 14

Fed. R. Civ. P. 23(e)(1) ................................................................................................... 14

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Anne Kastler, Saul Andrade, and Anthonicia Stallings ("Plaintiffs") respectfully request final approval of the April 30, 2021 Settlement Agreement and July 29, 2021 Addendum to Settlement Agreement (collectively, "Settlement") between Plaintiffs and Defendant Garten, Inc. formerly Oh My Green, Inc. ("Defendant"). May 3, 2021 Declaration of Graham B. LippSmith in Support of Motion for Preliminary Approval ("5/3/21 LippSmith Dec.") (Dkt. No. 87-1), Ex. 1; July 29, 2021 Declaration of Graham B. LippSmith in Support of Joint Supplemental Briefing in Support of Motion for Preliminary Approval of Settlement ("7/29/21 LippSmith Dec.") (Dkt. No. 90-1), Ex. A.

Plaintiffs seek relief on behalf of the following Class, certified for settlement purposes: All current and former non-exempt employees who worked for Defendant within California at any time during the period between February 28, 2015 and preliminary approval ("Class" or "Class Members"). Settlement, ¶ 7.

Plaintiffs and Defendant (the "Parties") have agreed to settle this matter for a Gross Settlement Fund in the amount of $500,000. Settlement, ¶ 11. The Gross Settlement Fund will be distributed as follows: (1) $215,081.26 in individual settlement payments to claimants; (2) $50,000 in penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA Penalties") (of which 75% or $37,500 will be paid to the LWDA and 25% or $12,500 will be paid to eligible Class Members); (3) $11,000 in Claims Administration Costs ("Administration Costs"); (4) $17,500 in total Enhancement Awards to Plaintiffs in the amounts of $7,500 for Plaintiff Kastler, $5,000 for Plaintiff Andrade, and $5,000 for Plaintiff Stallings; and (5) $175,000, or 35% of the Gross Settlement Fund, in attorney fees; and (6) reimbursement of litigation costs and expenses in the amount of $31,418.74 to Class Counsel ("Attorney Fees and Costs"). Settlement, ¶ 11. The Net Settlement Fund of $215,081.26 is the Gross Settlement Fund less the PAGA Penalties, Administration Costs, Enhancement Awards, and Attorney Fees and Costs. *Id.* at ¶ 12.

The Class Notice mailed to Class Members fully disclosed the requests for Attorney Fees and Costs, Enhancement Awards, Claims Administration Costs, and allocation for the PAGA

1  Payment. Most importantly, not a single Class Member objected to the Settlement or to the

2  allocations for Attorney Fees and Costs, the Enhancement Awards, Claims Administration Costs, or

3  the PAGA Payment. Furthermore, no Class Members filed a Request for Exclusion.

4  The Settlement is fair, adequate, and reasonable. It resulted from the Parties arm's-length,

5  good-faith negotiations, with the assistance of experienced counsel and a highly regarded mediator

6  who has mediated other wage-and-hour class action lawsuits. Accordingly, the Court should grant

7  final approval of the Settlement, as fully disclosed to the Class and requested herein.

8  **II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

9  Defendant Garten, Inc. formerly known as Oh My Green, Inc. provides food and beverage

10  preparation, catering, and delivery services to companies and offices, with an emphasis on healthy

11  and nutritious options. Defendant formerly employed Plaintiffs.

12  Plaintiff Kastler filed a Class Action Complaint for Damages against Defendant in San

13  Mateo County Superior Court on February 28, 2019. The case was removed to this Court on May 2,

14  2019. Plaintiffs' Counsel have litigated this matter actively since its inception and have engaged in

15  substantial review of records and data; met and conferred several times regarding motion

16  practice and discovery; propounded and responded to written discovery; and noticed, prepared for,

17  and took a deposition. May 3, 2021 Declaration of Edwin Aiwazian in support of Motion for

18  Preliminary Approval ("5/3/21 Aiwazian Dec.") (Dkt. No. 87-3), ¶ 18.

19  On April 29, 2021, Plaintiffs filed a Second Amended Complaint in which Plaintiffs allege

20  that Defendant engaged in uniform practices and procedures that violate the Labor Code: failure to

21  pay regular, minimum, and overtime wages properly, including their rounding policy; failure to pay

22  all compensation due for all work performed, including pre-shift, post-shift, and meal and rest

23  periods wages; failure to accurately calculate the regular rate for meal, rest, and overtime

24  premiums; failure to provide compliant meal periods, rest periods, and associated premium pay;

25  failure to pay timely wages during employment and upon termination or resignation; failure to

26  provide compliant wage statements; failure to maintain requisite payroll records; and failure to

27  reimburse necessary business expenses. Settlement, ¶ 3. Plaintiffs also allege Defendant's conduct

28  gives rise to PAGA penalties. *Id.* Plaintiffs contend the putative class is entitled to unpaid wages;

1  penalties, including PAGA penalties; and attorney fees and costs.

2          Defendant denies any liability or wrongdoing associated with Plaintiffs' allegations.

3  Settlement, ¶ 4. It also denies this case is appropriate for class treatment for any purpose other than

4  settlement. *Id.*

5          The Parties conducted formal and informal discovery, investigation of the claims, and

6  extensive discussions about the strengths and weaknesses of the claims and defenses. 5/3/21

7  Aiwazian Dec., ¶ 18. The Parties ultimately agreed to the Settlement.

8  **III.    SUMMARY OF SETTLEMENT TERMS**

9          The Settlement provides that Defendant will pay $500,000 into a Gross Settlement Fund.

10 Settlement, ¶ 11. The Gross Settlement Fund will cover (1) individual settlement payments to Class

11 Members, calculated as set forth below; (2) $50,000 in PAGA Penalties; (3) Administration Costs;

12 (4) Enhancement Awards to Plaintiffs; and (5) Attorney Fees and Costs. *Id.* The Parties also agree

13 to provisional Class certification, strictly and solely for the purposes of Settlement. *Id.* at ¶ 4.

14         The Net Settlement Fund is the Gross Settlement Fund less the PAGA Payment,

15 Administration Costs, Enhancement Awards, and Attorney Fees and Costs. Settlement, ¶ 12. The

16 Settlement provides for a $50,000 PAGA Payment. *Id.* at ¶ 18. In addition, the Parties agreed to

17 retain Simpluris, Inc. to handle the notice and settlement administration process. *Id.* at ¶ 21. The

18 Settlement provides for $11,000 to cover Administration Costs. *Id.* at ¶ 17. Plaintiffs' Counsel have

19 applied for Enhancement Awards of $7,500 for Plaintiff Kastler, $5,000 for Plaintiff Andrade, and

20 $5,000 for Plaintiff Stallings for their service as Class Representatives. *Id.* at ¶ 16. The differential

21 in proposed awards reflects that Plaintiffs Andrade and Stallings joined in this litigation after

22 Plaintiff Kastler. Finally, Plaintiffs' Counsel have applied for attorney fees in the amount of

23 $175,000, or 35% of the Gross Settlement Fund, as well as for reimbursement of reasonable

24 litigation costs and expenses not to exceed $40,000. *Id.* at ¶¶ 14, 15.

25         The Net Settlement Fund will be distributed pro rata to Settlement Class Members.

26 Settlement, ¶¶ 12, 13. The Settlement Administrator will facilitate the calculation of each

27 Settlement Class Member's pro rata share of the Net Settlement Fund ("Individual Settlement

28 Share") as follows:

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

- • Defendant will use time records to calculate Workweeks. Settlement, ¶ 13. Workweeks reflect the total number of weeks all Settlement Class Members worked as non-exempt employees in California during the Class Period. *Id.* Any calendar week in which a Class Member worked at least one day will be considered a Workweek. *Id.* The parties estimate that the Class Period includes 18,401 Workweeks. *Id.* at ¶ 35.

- • Within 14 days of preliminary approval, Defendant will provide the Settlement Administrator with the total number of Workweeks all Class Members worked in the aggregate, as well as the number of Workweeks each individual Class Member worked. *Id.* at ¶¶ 13, 23.

- • The Settlement Administrator will calculate each Settlement Class Member's share of the Net Settlement Fund. To calculate each share, the Settlement Administrator will divide the Net Settlement Fund by the total number of Class Workweeks, then multiply by the number of weeks each Settlement Class Member worked. *Id.* at ¶ 13.

The Settlement allocates $50,000 to PAGA Penalties. Settlement, ¶ 18. Of this, 75% ($37,500) will be paid to the LWDA. The remaining 25% ($12,500) will be paid on a pro rata basis to Class Members who worked for Defendant during the PAGA Period. *Id.* The Settlement Administrator will calculate each PAGA Payment by dividing $12,500 by the total number of PAGA Workweeks, then multiplying by the number of weeks each Class Member worked. *Id.*

The Settlement provides for tax treatment, allocating 33.33% of Individual Settlement Shares to wages reported on an IRS Form W-2, 66.67% to non-wages and interest reported on an IRS Form 1099, and 100% of PAGA Payments as penalties on IRS Form 1099. Settlement, ¶ 19. The Settlement Administrator will withhold deductions for employees' share of payroll taxes and withholdings from Individual Settlement Shares but not PAGA Payments. *Id.* The Settlement Administrator will issue each Settlement Class Member an individual settlement payment, reduced by the applicable withholdings. *Id.* Defendant will cover its portion of payroll taxes, in addition to the Gross Settlement Fund. *Id.*

The Settlement will resolve the Released Claims of Plaintiffs and all Class Members who do not opt out of the Settlement ("Settlement Class Members"). Settlement, ¶ 30. Settlement checks uncashed after 120 days of issuance shall be tendered to the State Controller's Office, Unclaimed Property Division in the name of the Settlement Class Member and shall indicate the amount of the cancelled check. Settlement, ¶ 29. There is no reversion to Defendant of any of the settlement funds.

## IV.    LEGAL STANDARD

The Court may grant final approval of a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted). A court "may consider some or all of the following factors" in determining whether a settlement meets the requirements of Rule 23(e):

> [1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citations omitted); *see also Hanlon*, 150 F.3d at 1026 (same). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

To grant final approval under Rule 23(e), courts must also consider whether the Class received adequate notice of the proposed settlement. "[A]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    Multiple Factors Support Granting Final Approval

#### 1.    The Strength of Plaintiffs' Case

The Settlement accounts for the strengths and weaknesses of each Party's position and the uncertainty about class certification, trial, or both. 5/3/21 Aiwazian Dec., ¶¶ 21–26; 5/3/21 LippSmith Dec., ¶¶ 25–26. Prior to agreeing to settle this matter, the Parties interviewed and obtained information from witnesses. 5/3/21 Aiwazian Dec., ¶ 18. The Parties' Counsel reviewed documents and information relating to Plaintiffs' and Class Members' employment with Defendant and performed significant legal research concerning PAGA representative actions, class

certification, off-the-clock theory, meal and rest periods, wage-and-hour enforcement, the Parties' claims and defenses, and the facts. 5/3/21 Aiwazian Dec., ¶¶ 17–19; 5/3/21 LippSmith Dec., ¶¶ 24–25. The Parties and their Counsel also considered Defendant's dire financial condition. 5/3/21 LippSmith Dec. ¶¶ 26–27.

In addition, the parties spent considerable time evaluating the substance of their claims and defenses in deciding to settle. To prevail on their claims, Plaintiffs must prove that Labor Code violations demonstrate both that Aggrieved Employees suffered losses and that Defendant's conduct gives rise to penalties. *See*, *e.g.*, *Elliot v. Spherion Pac. Work, LLC,* 572 F. Supp. 2d 1169, 1181–82 (C.D. Cal. 2008). Even if Plaintiffs established violations, Defendant likely would characterize those violations as "initial," thus, making heightened "subsequent violation" penalties unwarranted. *See* Lab. Code § 2699(f)(2); *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1209 (2008) ("Until the employer has been notified that it is violating a Labor Code provision . . ., the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties."). Plaintiffs' ultimate success on the merits is uncertain. However, the Class's expected recovery, weighed against the value of the settlement offer and considering the strength of Plaintiffs' case, supports approval of the Settlement.

### 2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The settlement amount is adequate given the expense, complexity, duration of further litigation, and Defendant's perilous financial condition. To prevail in this action, Plaintiffs would be required to move successfully for class certification pursuant to Rule 23, defeat summary judgment, receive a favorable verdict capable of withstanding a potential appeal, and complete these tasks before Defendant becomes insolvent. The risks and costs associated with class action litigation weigh strongly in favor of settlement.

Prior to agreeing to the Settlement, the Parties engaged in significant settlement negotiations and participated in two formal mediation sessions. 5/3/21 Aiwazian Dec., ¶¶ 7, 26; 5/3/21 LippSmith Dec., ¶¶ 26–28. The Honorable Michael Latin (Retired) and the Honorable Howard Broadman (Retired), well-regarded mediators experienced in mediating labor and employment matters, conducted the first and second mediations, respectively. 5/3/21 Aiwazian Dec., ¶ 7; 5/3/21

1   LippSmith Dec., ¶¶ 25–27. The parties' first mediation on April 1, 2020, before the Honorable

2   Judge Latin, did not result in a resolution. 5/3/21 Aiwazian Dec., ¶ 7. At that time, Defendant cited

3   financial distress due to Covid-19 and the effects of the pandemic on Defendant's primary business

4   model, *i.e.*, providing and distributing healthy snacks to offices. *Id*. According to testimony from

5   Defendant's Rule 30(b)(6) witness, Defendant had implemented massive layoffs to salvage funds,

6   shuttered the majority of its operations, and experienced severe depletions in revenue. 5/3/21

7   LippSmith Dec., ¶ 26.

8        Prior to and during settlement discussions, the Parties exchanged class and financial

9   information and engaged in an intensive discussion about their evaluations of this matter and

10  various aspects of this case, including the risks and delays of further litigation, especially

11  Defendant's financial condition; whether some claims were subject to dismissal; the risks of

12  proceeding with representative adjudication and class certification; the law on off-the-clock theory,

13  meal and rest periods, wage-and-hour enforcement, and PAGA representative claims; and the

14  evidence the Parties obtained, produced, and analyzed. 5/3/21 Aiwazian Dec., ¶ 17; 5/3/21

15  LippSmith Dec., ¶ 25.

16       Specifically, the Parties spent considerable time evaluating the procedural challenges that

17  continued litigation may pose. Although wage-and-hour actions are often amenable to resolution for

18  groups of employees, courts sometimes decide otherwise. For instance, some courts have required

19  "manageability" for adjudicating PAGA claims. *See, e.g.*, *Litty v. Merrill Lynch & Co.,* No. cv 14-

20  0425 PA (PJWx), 2015 WL 4698475 at *3–4 (C.D. Cal. Apr. 27, 2015) (dismissing PAGA claim

21  that would require a multitude of individualized assessments). Other courts considering PAGA

22  claims have required plaintiffs to establish standing and have bifurcated discovery, trial, or both.

23  *Amalgamated Transit Union v. Superior Court,* 46 Cal. 4th 993, 1001 (2009) (noting PAGA

24  "require[s] a plaintiff to have suffered an injury resulting from an unlawful action"); *Stafford v.*

25  *Dollar Tree Stores, Inc.,* No. 2:13-cv-1187 KJM CKD, 2014 WL 6633396 at *4 (E.D. Cal. Nov. 21,

26  2014) (finding judicial economy supported bifurcation because of the difficulties and inherent

27  uncertainties in establishing liability with respect to a large number of potentially aggrieved

28  employees). These issues add uncertainty to continued litigation.

1    Finally, the Parties spent considerable time evaluating the potential litigation of remedies.

2  Although PAGA clearly sets forth penalties, courts have discretion in setting those penalties, so that

3  they are not "unjust, arbitrary and oppressive, or confiscatory." *See* Lab. Code § 2699(e)(2).

4    Despite these challenges, Plaintiffs' Counsel negotiated a Gross Settlement Fund of

5  $500,000. 5/3/21 Aiwazian Dec., ¶ 9; 5/3/21 LippSmith Dec., ¶ 28. The Parties calculated the

6  Settlement using information uncovered during case investigation and litigation, exchange of

7  information for mediation, and Defendant's financial condition. 5/3/21 Aiwazian Dec., ¶ 18; 5/3/21

8  LippSmith Dec., ¶ 27. If the Court approves the PAGA Payment, Administration Costs,

9  Enhancement Award, and Attorney Fees and Costs in the Settlement, the Net Settlement Fund is

10  estimated to be at least $215,081.26. 5/3/21 Aiwazian Dec., ¶ 9; 5/3/21 LippSmith Dec., ¶ 28;

11  12/16/21 LippSmith Dec. ¶ 10. The amount of each Claimant's Individual Settlement Share and

12  each PAGA Recipient's Settlement Share will be calculated based on their respective Workweeks.

13  Settlement, ¶ 13. Plaintiffs' Counsel's analysis allowed them to estimate the potential claims on

14  behalf of the Class and State of California and to "conclude[e] that the consideration being paid for

15  the release of those claims represents a reasonable compromise." *Kullar v. Foot Locker Retail,* 168

16  Cal. App. 4th 116, 133 (2008); 5/3/21 Aiwazian Dec., ¶ 17, 21-27; 5/3/21 LippSmith Dec., ¶ 27.

17  Considering all the facts and circumstances of the Action, the Settlement represents a fair,

18  reasonable, and adequate recovery for the Class. 5/3/21 Aiwazian Dec., ¶¶ 28–29; 5/3/21 LippSmith

19  Dec., ¶ 38.

20    **3.    The Risk of Maintaining Class Action Status Throughout The Trial**

21    Certifying a class composed of 672 current and former employees presents complex issues

22  that could undermine certification at the class certification stage as well as at other, later stages of

23  the litigation. During all settlement discussions, the Parties conducted their negotiations at arm's

24  length, in an adversarial position. 5/3/21 Aiwazian Dec., ¶ 17; 5/3/21 LippSmith Dec., ¶ 25. The

25  Parties each believed in the merits of their claims and defenses. 5/3/21 Aiwazian Dec., ¶ 17; 5/3/21

26  LippSmith Dec., ¶ 26. Defendant and their counsel believed they would prevail at certification and

27  on the merits. Plaintiffs and their Counsel felt strongly they would obtain class certification and win

28  at trial. After conducting investigations and a deposition, propounding formal discovery,

exchanging informal discovery, and participating in settlement negotiations, the Parties agreed this case is well-suited for settlement, given the claims, defenses, legal landscape, costs and risks of continued litigation, and Defendant's precarious financial condition. 5/3/21 Aiwazian Dec., ¶ 17; 5/3/21 LippSmith Dec., ¶ 27.

Unfortunately, Defendant's dire financial circumstances became the driving issue during litigation and both mediations. By the second mediation, the Covid-19 pandemic wiped out nearly all of Defendant's business of supplying healthy snacks to businesses, and Defendant anticipates no imminent recovery. 5/3/21 LippSmith Dec., ¶ 26. Defendant's dire financial circumstances were a significant obstacle for the Parties to overcome in order to reach a settlement. Plaintiffs' investigation leading into mediation and information obtained during mediation—including but not limited to open questioning of Defendant by Judge Broadman (Ret.) and Plaintiffs' counsel— confirmed that the expected recovery on this case ultimately would very well be $0 because Defendant anticipates becoming insolvent if it cannot resolve these claims. *Id.*

### 4. The Amount Offered In Settlement

The $500,000 Gross Settlement Fund is reasonable given the stage of the proceedings, the defenses asserted, and Defendant's unhealthy financial condition. The Gross Settlement Fund constitutes a fraction of Defendant's potential statutory damage exposure based on the average hourly rate of $20.18 culled from data sampling, the class size of 672 individuals, the number of pay periods and workweeks, and the estimated number of violations based on data sampling. A review of past comparable class settlements involving the same or similar clients, claims, and/or issues also shows the Settlement is fair and falls within the range of possible approval:

| Case | *Schwab v. IT'SUGAR, LLC* Case No. RG15759877 Alameda Superior Court | *Polk v. Community Housing Partnership* Case No. CGC-14-541754 San Francisco Superior Court | *Martin v. Cal-Am Properties* Case No. BC574656 Los Angeles Superior Court |
|---|---|---|---|
| **Settlement fund** | $150,000.00 | $300,000.00* | $164,000.00 |
| **Class members** | 31 | 271 | 71 |
| **Class members to whom notice was sent** | 31 | 271 | 71 |

| Notice method | U.S. mail | U.S. mail | U.S. mail |
|---|---|---|---|
| Number and percentage of claim forms submitted | No claims process; auto-pay to Class Members who did not opt out. | No claims process; auto-pay to Class Members who did not opt out. | No claims process; auto-pay to Class Members who did not opt out. |
| Average recovery per class member | $2,265.78 | $579.83* | $1,170.59 |
| Amounts distributed to each cy pres recipient | $12,075.82 to California Department of Industrial Relations Unpaid Wage Fund, in the name of the Participating Class Member who did not cash their checks within the check cashing period. | $2,362.86 to California Department of Industrial Relations Unpaid Wage Fund, in the name of the Participating Class Member who did not cash their checks within the check cashing period. | $2,201.40 to Legal Aid Society-Employment Law Center |
| Administrative costs | Up to $9,000 | Up to $14,000 | Up to $10,000.00 |
| Attorney fees | $49,500.00 | $120,000.00 | $57,750.00 |
| Costs | Up to $50,000.00 | Up to $25,000 | Up to $14,000.00 |

*via two installments

5/3/21 LippSmith Dec., ¶ 28.

Even in a hypothetical world where Defendant somehow survives employees continuing to work from home, the risks inherent in years of continued litigation, trial, and appeals prove that this Settlement provides Plaintiffs and the Class with a much safer deal. Assuming that every member of the 684-member[2] class was unpaid for one hour for 18,401 workweeks at the average overtime rate of $30.27, which represents a high rate of overtime violations, unpaid overtime damages would total $556,998.27. *See* Lab. Code §§ 510 and 1198; 5/3/21 LippSmith Dec. ¶ 25. Assuming one violation of meal and rest break damages for every employee for 18,401 workweeks, meal and rest break damages would total $371,332 based on the average hourly rate of $20.18. *See* Lab. Code §§ 226.7 and 512(a); 5/3/21 LippSmith Dec. ¶ 25. Plaintiffs calculated scenarios on Labor Code penalties starting in the $700,000s, but those scenarios assumed every kind of infraction for every employee in every pay period. *See* Lab. Code §§ 203, 226, 1197.1; 5/3/21 LippSmith Dec. ¶ 25.

---

[2] Between August 26, 2021 and September 30, 2021, upon receiving the Class Data List from Defendant, the Settlement Administrator determined that the list contained data for 672 unique individuals identified as Class Members. Kline Dec. ¶ 5. The difference between the 684 and 672 figures in these calculations does not meaningfully change the analysis of the range of possible damages versus the actual recovery to Class Members.

1      These various valuations show high ranges of recoveries, assuming regular violations

2  impacting every employee, every week, which will be challenging to prove. More importantly,

3  achieving these kinds of recoveries would require Plaintiffs to run the table, by winning class

4  certification, beating all dispositive motions, qualifying all of their experts and opinions, proving

5  the types and frequencies of violations at trial, beating post-trial motions, and surviving appeals in

6  the Ninth Circuit. Each of these hurdles represents a major discounting factor on its own, so that

7  even Plaintiffs' most outsized, hypothetical recovery, years from now, fairly aligns with what the

8  Settlement provides aggrieved employees today. Even without Defendant's dire financial condition,

9  which risks immediately discounting this case to $0, the Settlement provides a fair recovery to

10  aggrieved employees now. These employees probably need this recovery now, given Defendant's

11  substantial downsizing.

12      In addition to fairness, the Court should evaluate whether the settlement advances PAGA's

13  primary objective "to incentivize private parties to recover civil penalties for the government that

14  otherwise may not have been assessed and collected by overburdened state enforcement agencies."

15  *See Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *4 (N.D.

16  Cal. Apr. 2, 2010). PAGA penalties must, in part, "be distributed to the [LWDA] for enforcement of

17  labor laws . . . and for education of employers and employees about their rights and responsibilities

18  under this code, to be continuously appropriated to supplement and not supplant the funding to the

19  agency for those purposes." *See* Lab. Code § 2699(j). As here, a PAGA settlement distributing 75%

20  of civil penalties to the LWDA and 25% of the civil penalties to the aggrieved employees fulfills

21  PAGA's express objectives. *Id.* at § 2699(i).

22      **5.    The Extent of Discovery Completed and the Stage of the Proceedings**

23      The Parties have actively litigated this matter since it commenced on February 28, 2019.

24  Prior to reaching the Settlement, the Parties extensively investigated the veracity, strength, and

25  scope of the claims. 5/3/21 Aiwazian Dec., ¶ 18; 5/3/21 LippSmith Dec., ¶¶ 24, 25. The Parties

26  have reached the Settlement based on this large volume of facts, evidence, and investigation. 5/3/21

27  Aiwazian Dec., ¶ 20.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

1    The Parties undertook sufficient discovery to inform their view of the reasonableness of the

2  Settlement. The Parties engaged in formal discovery, including deposing Defendant's Rule 30(b)(6)

3  witness, propounding written discovery, engaging experts, and exchanging documents. In addition,

4  the Parties conducted informal discovery, which included production and analysis of thousands of

5  pages of data.

6    Plaintiffs' Counsel conducted significant investigation into this case, engaged in formal and

7  informal discovery, reviewed and analyzed thousands of pages of documents and data Defendant

8  produced, and noticed and took one deposition of Defendant's Rule 30(b)(6) witness. 5/3/21

9  Aiwazian Dec., ¶ 18; 5/3/21 LippSmith Dec., ¶¶ 21, 25, 28. The volume of data and documents

10 Plaintiffs' Counsel reviewed and analyzed included the following, among others: Plaintiffs' and

11 other Class Members' employment records; a detailed sampling of Class Members' time and pay

12 data, including, but not limited to, spreadsheets of timecard and wage statement statistics;

13 Defendant's Employee Handbooks, California Handbook, manuals, meal period policy/agreement,

14 attendance policies, expense policy, forms, and procedures. 5/3/21 Aiwazian Dec., ¶ 18; 5/3/21

15 LippSmith Dec., ¶ 25.

16    Plaintiffs' Counsel interviewed Plaintiffs and other witnesses to gather facts and identify

17 potential witnesses. 5/3/21 Aiwazian Dec., ¶ 18. Plaintiffs' Counsel served and responded to

18 multiple sets of formal written discovery requests and noticed the depositions of Defendant's

19 person-most-knowledgeable designees, taking one deposition and preparing for the other

20 depositions in the event the case did not settle at mediation. *Id.* at ¶¶ 7, 18; 5/3/21 LippSmith Dec.,

21 ¶ 25. Counsel for the Parties also met and conferred to discuss issues relating to the pleadings,

22 discovery, motion practice, and the production of documents and data. 5/3/21 Aiwazian Dec., ¶ 18.

23 Prior to agreeing to mediate this matter, Plaintiffs' Counsel was preparing for Plaintiffs' Motion for

24 Class Certification, including meeting and conferring in writing and telephonically with

25 Defendant's counsel regarding multiple issues, including amending the complaint, Defendant's

26 Rule 30(b)(6) depositions, Plaintiff Kastler's deposition, and class certification deadlines. *Id.*

27 Plaintiffs' Counsel also prepared for and attended court proceedings and settlement negotiations,

28 including attending mediations. *Id.*; 5/3/21 LippSmith Dec., ¶ 21.

1    The Parties' active litigation of this matter has allowed Counsel to act intelligently in

2    assessing the fairness and reasonableness of the Settlement and supports granting final approval.

3    ### 6.    The Experience and Views of Counsel

4    Counsel's experience and their respective views of the Settlement weigh in favor of

5    approving the Settlement. Proposed Class Counsel's qualifications and experience support a

6    determination that Counsel is qualified to represent the Class's interests. Plaintiffs' Counsel have

7    extensive experience in employment class actions, including significant wage-and-hour litigation.

8    5/3/21 Aiwazian Dec., ¶ 6; 5/3/21 LippSmith Dec., ¶¶ 10–12. Based on that experience, Plaintiffs'

9    Counsel believe the Settlement is fair, reasonable, adequate and is in the best interest of the Class

10   Members. 5/3/21 Aiwazian Dec., ¶¶ 18, 27–28; 5/3/21 LippSmith Dec., ¶¶ 27, 38. While Class

11   Counsel's recommendations are not conclusive, the Court can properly consider them, particularly

12   where, as here, Plaintiffs' Counsel appear competent, have experience with this type of litigation,

13   and have completed significant discovery and investigation. Newberg Conte, *Newberg on Class*

14   *Actions* § 11.47. While courts have different views on the weight to accord Counsel's opinions of a

15   settlement agreement, this factor weighs in favor of approving the settlement. *E.g.*, *Carter*

16   *v. Anderson Merch.*, *LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is

17   accorded considerable weight."); *but see Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848,

18   852 (N.D. Cal. 2010) ("[T]his court is reluctant to put much stock in counsel's pronouncements, as

19   parties to class actions and their counsel often have pecuniary interests in seeing the settlement

20   approved.").

21   ### 7.    The Presence of a Governmental Participant

22   The presence of a governmental participant does not apply insofar as this matter does not

23   include a governmental entity as a party. However, the class representatives are acting as Private

24   Attorneys General in this case, and the Settlement includes PAGA Penalties to the LWDA. The

25   Settlement's allocation of funds to the LWDA and PAGA payments to the Class are fair and

26   reasonable and comport with the Labor Code. Lab. Code § 2699(i).

27   ### 8.    The Reaction of the Class Members to the Proposed Settlement

28   "[T]he absence of a large number of objections to a proposed class action settlement raises a

13

1    strong presumption that the terms of a proposed class settlement action are favorable to the class

2    members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal.

3    2004). "A low number of opt-outs and objections in comparison to class size is typically a factor

4    that supports settlement approval." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D.

5    Cal. 2015).

6      The Class Members overwhelmingly support the proposed settlement. No Class Members

7    objected to the Settlement. No Class Members sought to opt out of the settlement. Coupled with the

8    high rate of notice to the class via U.S. Mail, the Class Members' tacit approval of the proposed

9    Settlement strongly weighs in favor of granting final approval. *See* Declaration of Lindsay Kline

10   ("Kline Dec."), ¶¶ 7–10.

11   **VI. THE CLASS RECEIVED THE BEST NOTICE PRACTICABLE**

12     The Court "must direct notice in a reasonable manner to all class members who would be

13   bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is

14   practicable under the circumstances, including individual notice to all members who can be

15   identified through reasonable effort." The notice must "clearly and concisely state in plain, easily

16   understood language" the nature of the action, the class definition, and the class members' right to

17   exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that

18   reasonable efforts be made to reach all class members, it does not require that each class member

19   actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting the

20   standard for class notice is "best practicable" notice, not "actually received" notice).

21     In determining whether notice was adequate, the Court must ensure that the following

22   requirements are met:

23       The class must be notified of a proposed settlement in a manner that does not
24       systematically leave any group without notice; the notice must indicate that a
         dissident can object to the settlement and to the definition of the class; each
25       objection must be made a part of the record; those members raising substantial
         objections must be afforded an opportunity to be heard with the assistance of
26       privately retained counsel if so desired, and a reasoned response by the court on the
         record; and objections without substance and which are frivolous require only a
27       statement on the record of the reasons for so considering the objection.

28   *Officers for Justice*, 688 F.2d at 624–25 (internal quotation marks and citations omitted).

The Court previously approved the Notice Plan and appointed the Parties' agreed-upon, proposed administrator, Simpluris, Inc,. as Settlement Administrator. Dkt. No. 91; Settlement, ¶ 21. On October 6, 2021, Simpluris mailed Class Notice in English and Spanish to each of the 672 Class Members identified in the Class Data List via first class mail. Kline Dec., ¶ 7; Settlement, ¶ 23. The Claims Administrator calculated the Individual Settlement Shares and PAGA Settlement Shares; deducted and transmitted applicable state, and/or federal taxes thereon; and will mail the payment checks to Claimants and PAGA Recipients; issue W-2 and 1099 forms; calculate and disburse the Attorney Fees and Costs and Enhancement Award; and perform such other tasks necessary to effectuate the Notice Plan and terms of the Settlement. *Id*. ¶ 2; Settlement, ¶¶ 13, 18–19, 23, 25–28.

The Class Notice informed Class Members they could opt out of the Settlement by mailing a completed request to be excluded ("Request for Exclusion") to the Settlement Administrator within 45 calendar days of the mailing of the Notice ("Response Deadline"). Kline Dec., ¶ 8; Settlement, ¶¶ 24, 25.

The Class Notice informed Class Members of the number of workweeks they worked during the Class Period and PAGA Period based on Defendant's records. Settlement, ¶ 23. Class Members were able to dispute this information by providing the Settlement Administrator with additional information and documentation ("Dispute"), postmarked on or before the Response Deadline. *Id.* at ¶ 27. The Settlement Administrator has not received any Disputes of Workweeks from Class Members. Kline Dec., ¶ 19.

Within five calendar days, the Settlement Administrator remailed to the forwarding address any Notice returned as non-delivered on or before the Response Deadline. Kline Dec., ¶ 11; Settlement, ¶ 28. If no forwarding address was provided, the Settlement Administrator attempted to find a correct address promptly, using skip-tracing or other methods for searching the name, address and/or Social Security number of the Class Member involved. Kline Dec., ¶ 10; Settlement, ¶ 28. Upon locating another address, the Settlement Administrator then remailed the Notice. Kline Dec., ¶ 10; Settlement, ¶ 28. Class Members who receive a remailed Notice had 14 calendar days from the postmark date of the remailed Notice to object or opt-out. Settlement, ¶ 28.

1    The Settlement Administrator has received no Requests for Exclusion and no Objections to

2    the Settlement from Class Members. Kline Dec., ¶¶ 16–17.

3    The Notice described the terms and conditions of the Settlement; the monetary relief the

4    Settlement will provide to Claimants and PAGA Recipients; the deadlines and procedures to submit

5    a Request for Exclusion, Objection, or Dispute; and the date and time set for the Final Approval

6    Hearing. Settlement, Ex. 1. The Notice also listed the number of Workweeks credited to each Class

7    Member, stated the estimated gross amount of the Class Member's Individual Settlement Share and,

8    if applicable, provided an estimate of each PAGA Recipient's PAGA Payment. *Id.*

9    All six hundred seventy-two (672) Class Members will be paid their portion of the Net

10   Settlement Fund. Kline Dec., ¶ 12. Based on the calculation of the Net Settlement Amount above,

11   the average estimated Individual Settlement Share is $320.06, and the highest estimated Individual

12   Settlement Share is $2,571.12. *Id.* ¶ 14. The average estimated PAGA Settlement Share is $18.60

13   and the highest estimated PAGA Settlement Share is $96.91. *Id.* ¶ 15.

14   The Notice satisfied all due process requirements and complies with the standards of

15   fairness, completeness, and neutrality. *Newberg*, §§ 8.21, 8.39. The Court-approved Notice plan,

16   including the content of Notice, was legally sufficient and satisfied due process by fairly apprising

17   the Class Members of the terms of the Settlement; of the options for Class Members to exclude

18   themselves or object to the Settlement; and of the final approval hearing location, date, and time.

19   *See* Kline Dec., ¶ 19. The Notice plan was also reasonably calculated, under all the circumstances,

20   to apprise Class Members of the action and afford them an opportunity to present their objections,

21   exclude themselves from the Settlement, or dispute the number of workweeks they worked as a

22   non-exempt employees in California during the Class Period and PAGA Period based on

23   Defendant's records. *Id.* The Notice identifies the claims; the workweeks attributed to the particular

24   Class Member; the anticipated amount each Class Member will receive pursuant to the Settlement;

25   the date of the final approval hearing; and the Class Members' options to participate in the

26   Settlement, exclude themselves from the Settlement, or object to the Settlement. *Id.* The Notice

27   summarized the effect of the Settlement and specifies the released rights and claims. In sum, the

28   Notice plan provided the best notice practicable given the circumstances of this case, where the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

1  Class Members received direct mail of the notice in English and Spanish. *Id*. Accordingly, the

2  Court should find that the notice procedures used here complied with the notice requirements of

3  Rule 23(e).

4  **VII.    UPDATED ATTORNEY FEE AND COSTS INFORMATION**

5          Since the filing of the Class's Motion for Attorney Fees, Costs Reimbursement (Dkt. 94) on

6  September 14, 2021, Class Counsel has incurred 72.3 more hours for a total of $418,965 in lodestar,

7  and no additional costs. 12/16/21 LippSmith Dec., ¶ 10. Class Counsel's total lodestar, including

8  estimated lodestar for future work, is $474,093 for 859.8 hours in this case. *Id*. ¶ 11. Lawyers *for*

9  Justice timekeepers' total lodestar is $193,490 for 350.8 hours in this case. 12/15/21 Declaration of

10  Edwin Aiwaizian in support of Motion for Final Approval ("12/15/21 Aiwazian Dec."), ¶ 10.

11          Class Counsel updated the lodestar calculations originally provided in the Motion for

12  Attorney Fees, Costs Reimbursement in light of the additional time and costs. 12/16/21 LippSmith

13  Dec., ¶¶ 17-20. If the Court awards the Settlement's maximum of $175,000 in attorney fees, the

14  lodestar multiplier for that amount is 0.37. *Id*. ¶ 18. Thus, attorney fees of $175,000 represent only

15  37% of Class Counsel's incurred and estimated future lodestar. *Id*. To put it another way, the 37%

16  lodestar means that Class Counsel will take a 63% reduction in their attorney fees. *Id*. Given the

17  time Class Counsel has committed, will commit, the costs incurred, the risks taken, and the results

18  achieved, awarding attorney fees equivalent to a lodestar with a 0.37 multiplier is more than

19  justified, reasonable, and fair. *See id*.

20  **VIII.    CONCLUSION**

21          For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval

22  of the Settlement.

23

24  Dated: December 16, 2021                **LIPPSMITH LLP**

25

26                                  By:    /s/ *Graham B. LippSmith*
                                          Graham B. LippSmith
27                                        Celene Chan Andrews

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAWYERS for JUSTICE, PC**

Edwin Aiwazian
Arby Aiwazian
Jenay Younger
Kenyon Harbison

Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No.: 4:19-cv-02411-HSG

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2021, I electronically filed a **PLAINTIFFS'**
**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**AND PAGA SETTLEMENT** with the Clerk of the Court, using the CM/ECF system, which will
send notification of such filing to the counsel of record in this matter who are registered on the
CM/ECF system to receive service.

*/s/ Graham B. LippSmith*
Graham B. LippSmith