+

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE KASTLER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>OH MY GREEN, INC.,<br><br>    Defendant. | Case No. 19-cv-02411-HSG<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 94, 100 |

Pending before the Court are Plaintiffs' motions for final approval of class action and PAGA settlement and for attorneys' fees, costs reimbursement, and enhancement payments. Dkt. Nos. 94, 100. The Court held a final fairness hearing on January 27, 2022, Dkt. No. 102, and, at the request of the Court, Named Plaintiffs submitted supplemental declarations following the hearing. Dkt. Nos. 103-105. For the reasons set forth below, the Court **GRANTS** the motion for final approval and **GRANTS IN PART AND DENIES IN PART** the motion for attorneys' fees, costs reimbursement, and enhancement payments.

**I.     BACKGROUND**

    **A.     Factual and Procedural Background**

On February 28, 2019, Plaintiff Anne Kastler filed a wage and hour putative class action complaint against Defendant Oh My Green, Inc., now known as Garten, Inc. Dkt. No. 1-1. Plaintiff Kastler was employed by Defendant as an hourly, non-exempt employee in California from approximately November 2017 to January 2018. Dkt. No. 85 ¶ 26. Plaintiff Kastler alleges, on behalf of herself and all others similarly situated, that Defendant underpaid Plaintiffs in violation of California labor laws, including failing to pay regular, minimum, and overtime wages as well as failing to provide compliant meal periods, rest periods, and associated premium pay.

*See id.* ¶¶ 35-55. Plaintiffs assert eight causes of action for violations of (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 226.7 and 512(a) (unpaid meal period premiums); (3) California Labor Code section 226.7 (unpaid rest period premiums); (4) California Labor Code sections 1194, 1197, and 1197.1 (unpaid minimum wages); (5) California Labor Code sections 201 and 202 (final wages not timely paid); (6) California Labor Code section 226(a) (non-compliant wage statements); (7) California Labor Code sections 2800 and 2802 (unreimbursed business expenses); and (8) California Business and Professional Code section 17200 (Unfair Competition Law). *See generally id.*

The parties participated in two mediation sessions, one in April 2020 and another in March 2021, and reached a tentative settlement at the second mediation with Judge Howard R. Broadman (Ret.). Dkt. No. 87-3, Decl. of Edwin Aiwazian ("Aiwazian Decl.") ¶ 7; Dkt. No. 79.

The parties then filed a second amended complaint adding two additional Named Plaintiffs and a ninth claim under the Private Attorneys General Act ("PAGA"). *See generally* Dkt. No. 85 ("SAC"). The new Named Plaintiffs, Saul Andrade and Anthonicia Stallings, worked for Defendant as hourly, non-exempt employees from approximately June 2017 to February 2018 and December 2018 to January 2019, respectively. *Id.* ¶¶ 27–28.

On May 3, 2021, Plaintiffs filed a motion for preliminary approval of the class action and PAGA settlement. Dkt. No. 87. Following the hearing on the motion, the parties filed a supplemental brief and an addendum to the settlement agreement, which clarified certain settlement terms. *See* Dkt. No. 90. The Court granted preliminary approval on August 13, 2021. Dkt. No. 91.

**B.     Settlement Agreement**

The key terms of the Settlement Agreement, Dkt. No. 87-2, as amended on July 29, 2021, Dkt. No. 90-2, are as follows:

**i.     Class Definitions**

The Settlement Class is defined as "[a]ll current and former non-exempt employees who worked for Defendant within California at any time during the period between February 28, 2015 and preliminary approval." Dkt. No. 87-2 ¶ 7.

2

### ii. Settlement Benefits

Settlement Benefits: Defendant will make a $500,000 non-reversionary payment into a "Gross Settlement Fund." *Id.* ¶ 11. The Gross Settlement Fund includes payments to Class Members, settlement administration expenses, PAGA penalties in the amount of $50,000, incentive awards, attorneys' fees, and litigation costs. *Id.* ¶¶ 11, 17–18. In addition to the Gross Settlement Fund, Defendant will pay its "share of the employer-side payroll taxes on the amount of the Settlement allocated to wages." *Id.* ¶ 11. Individual settlement payments will be calculated proportionally based on the number of work weeks a Class Member worked during the class period. *Id.* ¶ 13

PAGA Allocation: As to the PAGA payment, the parties propose that 75% ($37,500) of the total sum of $50,000 will be proportionally paid to the California Labor and Workforce Development Agency ("LWDA"). *Id.* ¶ 18; see Cal. Lab. Code § 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved employees). The remaining 25% ($12,500) will be allocated on a pro rata basis to Class Members "employed by Defendant as non-exempt employees in California during the period from February 28, 2018 to preliminary approval ('PAGA Period')." *Id.* All Settlement Class Members, even those who opt out, will receive their pro-rata share of the PAGA payment and be bound by the release set forth in Paragraph 30 of the Settlement Agreement as to claims arising under PAGA. *Id.*

### iii. Release

Settlement Class Members will release the "Released Parties" from:

> any and all claims, demands, rights, liabilities, actions, grievances, demands for arbitration, and causes of action, of every nature and description, that were or could have been asserted based on the facts alleged in the SAC, including but not limited to, any state or federal claims relating to the failure to pay wages and overtime, failure to provide meal or rest breaks, failure to pay minimum wage, failure to provide accurate and complete wage statements, failure to keep requisite payroll records, failure to timely pay employees during employment or at termination, failure to reimburse employees for business expenses, unfair competition, PAGA penalties, waiting time penalties, interest, attorney fees, or any other alleged known or unknown wage and hour violations that were alleged or could reasonably have been alleged based on arising out of the acts, facts, transactions, occurrences, representations, or omissions that were asserted in the Lawsuit ("Released Claims"). Any Class Member who

3

> receives a payment under PAGA pursuant to Paragraph 18 and who opts out of the Settlement is only bound by the release of PAGA claims.

*Id.* ¶ 30. The "Released Parties" include "Defendant, and all of their past, present, and future officers, directors, agents, employees, attorneys, insurers, re-insurers, parent companies, and subsidiaries." *Id.*

Named Plaintiffs "make the additional general release of all claims, known or unknown, in exchange and consideration of the Enhancement Awards described in Paragraph 16 [of the Settlement Agreement] which are subject to and contingent upon the Court's review and approval." Dkt. No. 90-2 at 3.

### iv. Class Notice and Procedure

The parties agreed that Simpluris Inc. ("Simpluris"), a third-party settlement administrator, would mail notice of the class action settlement by first-class U.S. mail. Dkt. No. 87-2 ¶¶ 21, 23. The notice included: a summary of the claims, a summary of the settlement terms, an estimate of the settlement share and any PAGA payment based on the number of workweeks they worked during the class period and PAGA period, a description of the released claims, and instructions on how to object to and opt out of the settlement, including relevant deadlines. *See* Dkt. No. 90-4.

Class Members had 45 days after the mailing of class notice to submit a request for exclusion. Dkt. No. 90-2 at 2. Class Members who received a re-mailed notice had 14 days from the postmark date of the re-mailed notice to submit a request for exclusion. Dkt. No. 87-2 ¶ 28.

### v. Enhancement Awards

The Settlement Agreement permits Plaintiff Kastler to apply for an enhancement award up to $7,500, and Plaintiffs Andrade and Stallings to each apply for awards of up to $5,000. *Id.* ¶ 16. Defendant agreed not to oppose these requests. *Id.* If the Court approves less than the amount requested, the difference between the requested and awarded amounts will be included in the Net Settlement Fund. *Id.*

### vi. Attorneys' Fees and Costs

The Settlement Agreement permits Class Counsel to file an application for attorneys' fees in an amount up to $175,000, as well as costs up to $40,000. *Id*. ¶¶ 14–15. Defendant agreed not

4

1  to oppose these requests. *Id*. Any difference between the requested and awarded amounts will be
2  included in the Net Settlement Fund. *Id*.

3  **II.  ANALYSIS**
4      **A.  Final Settlement Approval**
5          **i.  Class Certification**

6  Final approval of a class action settlement requires, as a threshold matter, an assessment of
7  whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and
8  (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that
9  would affect these requirements have changed since the Court preliminarily approved the class on
10 August 13, 2021, this order incorporates by reference its prior analysis under Rules
11 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 91.

12         **ii.  The Settlement**

13 "The claims, issues, or defenses of a certified class may be settled . . . only with the court's
14 approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a
15 hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers*
16 *for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th
17 Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill
18 the objectives outlined above. In other words, the court's intrusion upon what is otherwise a
19 private consensual agreement negotiated between the parties to a lawsuit must be limited to the
20 extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or
21 overreaching by, or collusion between, the negotiating parties . . . "). Where the parties reach a
22 class action settlement prior to class certification, district courts apply "a higher standard of
23 fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v.*
24 *Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements
25 "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of
26 interest" to "ensure that class representatives and their counsel do not secure a disproportionate
27 benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'"
28 *Roes, 1-2 v. SFBSC Mgmt.*, LLC, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citations omitted). To

assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 91 at 17, 18. Simpluris, a neutral third-party settlement administrator, mailed notice of the class action settlement to the last known address of each of the 672 Class Members. *See* Dkt. No. 100 at 15. For any returned Notices, the Settlement Administrator attempted to find a correct address using skip-tracing, then re-sent the

1    packets. *See id.* At the hearing, Plaintiffs' counsel reported that they were unable to reach 10 of

2    the 672 Class Members, despite their best efforts. In light of these facts, the Court finds that the

3    parties have sufficiently provided the best practicable notice to the Class Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the substantial risks posed by further litigation. This case involves complex issues that could ultimately result in the denial of class certification, and, in the absence of a settlement, Plaintiffs would need "to receive a favorable verdict capable of withstanding a potential appeal." *See* Dkt. No. 100 at 13. Moreover, Plaintiffs face the substantial risk of Defendant, a business office caterer, becoming insolvent. *Id.* at 6-7. Plaintiffs assert that Defendant's business has suffered increased losses during the Covid-19 pandemic, and that, despite Defendant implementing "massive layoffs" and shuttering the majority of its operations, imminent recovery is unlikely. *Id.* Plaintiffs' "investigation leading into mediation and information obtained during mediation— including but not limited to open questioning of Defendant by the mediator and Plaintiffs' counsel—confirmed that the expected recovery on this case ultimately would very well be $0

1  because Defendant anticipates becoming insolvent if it cannot resolve these claims." *Id.* at 9.  In
2  reaching a settlement, Plaintiff has ensured a favorable recovery for the class.  Accordingly, these
3  factors weigh in favor of approving the settlement.

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed.  Because the parties provisionally certified the class for the purposes of settlement, Plaintiffs avoided the risks inherent in certifying and then maintaining class status throughout the litigation.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification orders are "inherently tentative"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]here is no guarantee the certification would survive through trial[.]").  In a wage and hour case, successful maintenance of class certification is not a given, and thus this factor weighs slightly in favor of approval.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval.  Based on the facts in the record, the Court finds that the $500,000 gross settlement amount, *see* Dkt. No. 87-2 ¶ 11, falls "within the range of reasonableness" in light of the risks and costs of litigation.  *See, e.g.*, *Reynolds v. Direct Flow Medical, Inc.*, No. 17-cv-00204-KAW, 2019 WL 4168959 *3 (N.D. Cal. Sept. 3, 2019) (granting final approval for a settlement amount representing 13% of plaintiffs' estimated full-verdict value); *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial).  Plaintiffs estimate that the average individual Settlement Share is $320.06, the highest Settlement Share is $2,571.12, the average PAGA Settlement Share is $18.60, and the highest PAGA Settlement Share is $96.91.  Dkt. No. 100 at 16.  As Plaintiffs acknowledge, the Gross Settlement Fund constitutes a fraction of Defendant's potential statutory exposure.  *Id.* at 9.  Plaintiffs calculate that unpaid overtime damages could total $556,998.27

(assuming every class member was unpaid for 18,401 workweeks at the average overtime rate of $30.27); meal and rest break damages could total $371,332 (assuming one violation for every employee for 18,401 workweeks); and Labor code penalties could start in the $700,000s (assuming every kind of infraction for every employee in every pay period). *Id.* at 10. Totaling these three sums, the net settlement fund represents roughly 30.7% of Plaintiffs' potential recovery at trial. However, Plaintiffs also point to the genuine risk of gaining nothing at all if Defendant's financial condition continues to deteriorate. *Id.* In light of the risks and costs posed by continued litigation, the settlement amount falls well "within the range of reasonableness." *See* Dkt. No. 91 at 16.

The Court further finds that the parties have reasonably tailored each Class Member's anticipated recovery based on the number of weeks worked during the covered time periods. *See* Dkt. No. 87-2 ¶ 13. This factor weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Plaintiffs' counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after Plaintiff conducted adequate discovery, did a thorough analysis of the alleged Labor Code violations, ran calculations based on time and payroll records, and participated in two mediation sessions. *See* Aiwazian Decl. ¶¶ 7, 18. The Court finds that the parties received, examined, and analyzed facts and material sufficient to allow them to reach a fair settlement agreement. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel. The Court has previously evaluated class counsel's qualifications and experience and concluded that class counsel is qualified to represent the Class Members' interests in this action. *See* Dkt. No. 91 at 11; *see also* Dkt. No. 87 Decl. of Graham LippSmith ¶¶ 2-3, 5-18; Aiwazian Decl. ¶¶ 4-6. Plaintiffs' counsel have stated that they "believe the Settlement is fair, reasonable, adequate, and is in the best interest of the Class Members." Dkt. No. 100 at 13. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP,

2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class Members were advised of the requirements to object to or opt out of the settlement. *See* Dkt. No. 90-4 at 3-6. As of December 16, 2021, the Settlement Administrator had received no Requests for Exclusion or Objections. Dkt. No. 100 at 16. The Court finds that the absence of objections indicates strong support among the Class Members and weighs in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

### 7. Evidence of Conflicts and Signs of Collusion

Before approving settlements, courts look for both explicit evidence of collusion and subtle signs of self-interest. *Cmty Res. for Indep. Living, et al. v. Mobility Works of Cal., LLC, et al.*, 553 F. Supp. 3d 881, 885 n. 3 (N.D. Cal. 2020). Because no facts that would affect this inquiry have changed since the Court preliminarily approved the class on August 13, 2021, this order incorporates by reference its prior analysis regarding evidence of conflicts and signs of collusion as set forth in the order granting preliminary approval. *See* Dkt. No. 91 at 12-14.

\*   \*   \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the Class Members received adequate notice.

Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment

In its unopposed motion, Class Counsel asks the Court to approve awards of $175,000 in attorneys' fees, $31,348.74 in litigation costs, and $17,500 in total enhancement awards. *See* Dkt. No. 94 at 1.

#### i. Attorneys' Fees

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund method when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941(*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

1      Under the percentage-of-the-fund method, twenty-five percent of a common fund is the
2 benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654
3 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark'
4 for a reasonable fee award, providing adequate explanation in the record of any 'special
5 circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d
6 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate,
7 the award must be supported "by findings that take into account all of the circumstances of the
8 case." *Vizcaino*, 290 F.3d at 1048.

Although "the choice between lodestar and percentage calculation depends on the circumstances, [ ] either method may [ ] have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (quotations omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations under one method against those under another method. *Vizcaino*, 290 F.3d at 1050–51.

### b. Discussion

Plaintiffs' counsel asks the Court to approve an award of $175,000 in attorneys' fees. *See* Dkt. No. 94 at 1. Plaintiffs' counsel represents that, at the time the Motion for Attorney Fees was filed, the LippSmith LLP firm had spent 336 hours and Lawyers *for* Justice had spent 353 hours on this case. *Id.* at 9-10. They anticipate spending an additional 150 hours finalizing settlement procedures. *Id.* at 10. Plaintiffs' counsel's hourly rates "range from $350 to $800 for attorneys with 12 to 18 years of experience and from $150 to $200 for a paralegal with four years of experience." *Id.* at 11. According to Plaintiffs' calculations, "[t]he LippSmith LLP timekeepers' total lodestar is $379,035 for 336.7 hours" and the Lawyers *for* Justice's total lodestar is "at least $194,150 for 353 hours." Dkt. No. 94-4, Decl. of Graham LippSmith ¶ 10, Ex. 1; Dkt. No. 94-1 Decl. of Edwin Aiwazian ¶ 10 & Ex. A. The requested fee award is much less than this amount, totaling approximately 35% of counsel's combined lodestar amounts. Counsel notes that they have "agreed to seek much less than their lodestar in attorney fees because of the very limited funds available from a financially dwindling defendant, wanting to preserve a large share of the

12

available funds for a direct, cash benefit to Class Members." Dkt. No. 94 at 15.

Plaintiffs' counsel calculates that it has incurred $31,348.74 in costs. *See id.* at 10. Litigation costs are divided between LippSmith ($7,693.75) and Lawyers *for* Justice ($23,724.99). Dkt. No. 94-4, Decl. of Graham LippSmith ¶ 17; Dkt. No. 94-1, Decl. of Edwin Aiwazian ¶ 17 & Ex. B.

The Court recognizes that class counsel obtained significant results for the Class Members, as discussed in Section II.A.ii, above. No Class Members requested exclusion or objected to the Settlement Agreement, suggesting strong support for the settlement's outcome. *See* Dkt. No. 100 at 16. Further, Plaintiffs' Counsel assumed substantial risk in litigating this action on a contingency fee basis and incurring costs without the guarantee of payment for its efforts.

The Court understands the importance of carefully reviewing class fee award requests:
> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino*, 290 F.3d at 1052 (quotation omitted). Having reviewed class counsel's filings, the Court finds that the billing rates used by class counsel to calculate the lodestar are reasonable and generally in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation. *See, e.g., Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *4 (N.D. Cal. Aug. 15, 2014) (collecting cases, and finding prevalent rates ranging from $400 for associates to $750 for partners litigating civil rights and employment cases in this District). The Court further finds that the hours expended were reasonable and non-duplicative. Accordingly, the Court finds the requested fee award appropriate.

This is confirmed by a comparison to the percentage-of-fund method. The requested fee award is $175,000, or approximately one-third of the Gross Settlement Fund. Plaintiffs' counsel has pointed to cases in which courts have awarded attorneys' fees above the twenty-five percent benchmark, *see* Dkt. No. 94 at 18, and the Court finds that the record warrants doing so in this case. Here, Plaintiffs' counsel took the case on a contingency fee basis with the risk of no payment should Defendant become insolvent. The Court is also aware that continued litigation

presents significant risk of zero recovery for both Class Members and attorneys. Most significantly, the requested award is a negative multiplier of the lodestar. Accordingly, the Court finds the requested fee award appropriate.

Under the lodestar method, the Court **GRANTS** attorneys' fees of $175,000 as well as litigation costs of $31,348.74.

### ii. Incentive Award

Plaintiffs' counsel requests enhancement awards of $7,500 for Plaintiff Kastler and $5,000 each for Plaintiffs Andrade and Stallings. *See* Dkt. No. 94 at 1. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

Named Plaintiffs submitted declarations describing the significant time they spent working with counsel on litigation preparation by, among other items, providing documents, identifying witnesses, and actively participating in the settlement process. *See* Dkt. Nos. 103, 104, 105. According to Plaintiff Kastler's Declaration, she has been actively involved in the case and has spent significant time producing relevant evidence. *See generally* Dkt. No. 103. Plaintiff Kastler says she spent hours in phone conversations with her attorneys, conducted independent research, reviewed documents, and prepared for a possible deposition and the mediation sessions. *See*

14

*generally id.* All told, Plaintiff Kastler estimates she spent 41.5 working on this case. *Id.* at ¶ 13. The Court finds that Plaintiff Kastler added substantial value to this case.

Plaintiffs Andrade and Stallings also submitted declarations describing their contributions to the case. *See* Dkt. Nos. 104, 105. Although Plaintiffs Andrade and Stallings joined as Named Plaintiffs after Plaintiff Kastler, they also actively participated in litigation preparation by promptly providing documents, corresponding with attorneys, doing independent research for the case, and participating in settlement proceedings. *See generally* Dkt. Nos. 104, 105. All told, Plaintiff Andrade estimates he spent a total of 28 hours working on the case, with 11.5 of those hours occurring after he became a Named Plaintiff. Dkt. No. 105 ¶ 12. Plaintiff Stallings estimates she spent a total of 47 hours working on the case, with 19 of those hours occurring after she became a Named Plaintiff. Dkt. No. 104 ¶ 12.

However, the Court finds that enhancement awards of $7,500 and $5,000, at 23 and 15 times larger than the average, are disproportionate to the estimated average individual Settlement Share of $320.06, and the highest Settlement Share of $2,571.12. *See* Dkt. No. 100 at 16. The Named Plaintiffs have contributed between 28 and 47 hours to the case. *See* Dkt. Nos. 104 ¶ 12, 105 ¶ 12. While they added value and helped make this settlement possible, the Net Settlement Fund represents a fraction of the total possible recovery, and the work put into the case does not warrant enhancement awards so much larger than the average Settlement Share.

Plaintiffs' counsel's request for enhancement awards is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** enhancement awards in the amount of $5,000 for Plaintiff Kastler and $2,500 each for Plaintiffs Andrade and Stallings.

### III. CONCLUSION

For the foregoing reasons it is hereby ordered that:

1. Plaintiffs' Motion for Final Approval of Class Action and PAGA Settlement is **GRANTED**.

2. Plaintiffs' Motion for Attorney Fees, Costs Reimbursement, and Enhancement Payments is **GRANTED IN PART AND DENIED IN PART.**

3. The Court approves the settlement amount of $500,000, including payments of

$50,000 in PAGA penalties; attorneys' fees in the amount of $175,000; litigation costs in the amount of $31,348.74; and enhancement awards for the three Named Plaintiffs in the amount of $5,000 for Plaintiff Kastler and $2,500 each for Plaintiffs Andrade and Stallings, for a total of $10,000.

The parties and settlement administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this Order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 4/19/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge